## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

2007 MAR -1  A 10: 35

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| Lehman Brothers Bank, FSB, *successor-in-interest* to Capital Crossing Bank,       Plaintiff, <br><br> v. <br><br> SouthTech Enterprises, LLC, Charles F. Carter, III and Shannon Marie Carter,       Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

CIVIL ACTION NO.

1:07CV183- wha

## COMPLAINT

COMES NOW, Lehman Brothers Bank, FSB, successor-in-interest to Capital Crossing Bank, and for its Complaint against SouthTech Enterprises, LLC, Charles F. Carter. III, and Shannon Marie Carter (collectively the "Defendants"), states as follows:

### PARTIES

1.      Lehman Brothers Bank, FSB (the" Bank") is a federal savings bank headquartered in Wilmington, Delaware.

2.      SouthTech Enterprises, LLC ("STE") is an Alabama limited liability company with its principal place of business located on Highway 123, Ariton, Alabama.

3.      Charles F. Carter, III ("Mr. Carter") is an adult individual residing in Ariton, Alabama.

4.    Shannon Marie Carter ("Ms. Carter") is an adult individual residing in Ariton, Alabama. (Mr. Carter and Ms. Carter, together with STE, are collectively referred to as the "Guarantors")

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332.  Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(a).

## FACTS

6.    On August 24, 1999, STE executed a promissory note in favor of SouthTrust Bank, NA ("SouthTrust") in the principal amount of $501,744.05 (the "STE Note").  A true and correct copy of the STE Note is attached hereto as **Exhibit "A"**.

7.    On May 19, 2006, Wachovia Bank, NA, successor by merger to SouthTrust Bank, ("Wachovia") executed an allonge to the STE Note endorsing it to the Bank (the "STE Allonge").  A true and correct copy of the STE Allonge is attached hereto as **Exhibit "B"**.

8.    On August 24, 1999, SouthTech Industries, Inc. ("STI") executed a promissory note in favor of SouthTrust in the principal amount of $500,212.00 (the "STI Note"). (STE and STI are collectively referred to as the "Borrowers")  A true and correct copy of the STI Note is attached hereto as **Exhibit "C"**.

9.    On May 19, 2006, Wachovia executed an allonge to the STI Note endorsing it to the Bank (the "STI Allonge").  A true and correct copy of the STI Allonge is attached hereto as **Exhibit "D"**.

10.    On October 26, 2004, STI executed an additional promissory note in favor of SouthTrust in the principal amount of $250,000, secured in part by accounts receivable (the "AR Note") (the STE Note, the STI Note and the AR Note are collectively referred to as the "Notes"). A true and correct copy of the AR Note is attached hereto as **Exhibit "E"**.

11.    On May 19, 2006, Wachovia executed an allonge to the AR Note endorsing it to the Bank (the "AR Allonge"). A true and correct copy of the AR Allonge is attached hereto as **Exhibit "F"**.

12.    On January 11, 2006, the Carters each executed an "Unconditional Guaranty" of the timely payment of all obligations of STE (the "Carter STE Guaranty"). A true and correct copy of the Carter STE Guaranty is attached hereto as **Exhibit "G"**.

13.    On January 11, 2006, the Guarantors further executed an "Unconditional Guaranty" of the timely payment of all obligations of STI (the "Carter STI Guaranty"). A true and correct copy of the Carter STI Guaranty is attached hereto as **Exhibit "H"**.

14.    On January 11, 2006, STE executed an Unconditional Guaranty of the timely payment of all obligations of STI (the "STE Guaranty"). A true and correct copy of the STE Guaranty is attached hereto as **Exhibit "I"**. (The STE Guaranty, together with the Carter STE Guaranty and the Carter STI Guaranty, are referred to as the "Guaranties")

15.    The Borrowers have failed to make installment payments as due pursuant to the Notes and have failed to cure such defaults upon demand.

16.    All periods of forbearance pursuant to multiple forbearance agreements with the Borrowers have expired.

17.     STI filed a petition for relief in the United States Bankruptcy Court for the Middle District of Alabama on February 9, 2007.

18.     Wachovia has assigned and granted the Bank all rights and powers necessary to enforce the Notes and the Guaranties.

19.     As of February 1, 2007, the total amount owed on the STE Note equaled $422,416.28, exclusive of accruing interest, costs and attorneys fees.

20.     As of February 1, 2007, the total amount owed on the STI Note equaled $256,878.23, exclusive of accruing interest, costs and attorneys fees.

21.     As of February 1, 2007, the total amount owed on the AR Note equaled $247,050.35, exclusive of accruing interest, costs and attorneys fees.

## COUNT I: BREACH OF PROMISSORY NOTE

22.     The Bank adopts and re-alleges the averments of paragraphs 1-21 above.

23.     STE has failed to make payment when due and the STE Note is in default.

24.     The Bank is entitled to immediate payment of all amounts due under the STE Note.

WHEREFORE, the Bank demands judgment against SouthTech Enterprises, LLC in the amount of $422,416.28, plus interest, court costs and costs of collection, including reasonable attorneys' fees. The Bank seeks such additional relief which this Court deems just and proper.

## COUNT II: BREACH OF GUARANTIES

25.    The Bank adopts and re-alleges the averments of paragraphs 1-24 above.

26.    The Bank has made demand on all Guarantors for payment of all amounts owed under the Guaranties, but such amounts have not been paid.

27.    The Guarantors have each breached the Guaranties by failing to pay the Bank the amounts due there under.

WHEREFORE, the Bank demands judgment against Shannon Marie Carter, Charles F. Carter, III, and SouthTech Enterprises, LLC jointly and severally in the amount of $926,344.86, plus interest, court costs and costs of collection, including reasonable attorneys' fees. The Bank seeks such additional relief which this Court deems just and proper.

Christie Lyman Dowling
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 226-8782
Facsimile: (205) 488-5673

*Attorney for Lehman Brothers Bank, FSB,
successor-in-interest to Capital Crossing Bank*

**PLAINTIFF:**

Lehman Brothers Bank, FSB
successor-in-interest to
Capital Crossing Bank
c/o Christie L. Dowling, Esq.
Balch & Bingham LLP
P.O. Box 306
Birmingham AL 35201

**TO BE SERVED UPON THE DEFENDANT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED:**

SouthTech Enterprises, LLC
c/o Carl A. Phillips, Its Registered Agent
P.O. Box 720
Aritron, AL 36311

**TO BE SERVED UPON THE DEFENDANTS BY SPECIAL PROCESS SERVER, CAPITOL INVESTIGATION OR A REPRESENTATIVE THEREOF:**

Charles F. Carter, III
503 Black Lake Road
Ariton, AL 36311

Shannon Marie Carter
503 Black Lake Road
Ariton, AL 36311

**EXHIBIT "A"**

# INSTALLMENT NOTE

523 2227
41095 (01)   *AEX

$ __501,744.05__                    __Birmingham__ , __AL__      __AUGUST 24__ , __1999__
                                      (City)        (State)        (Date)

For value received, the undersigned (whether one or more, hereinafter called the "Obligors") promise(s) to pay to the order of _____
__SouthTrust Bank, National Association__ _____ (hereinafter called the "Bank" or, together with any other holder of this note, the "Holder"), at any office of the Bank in __Birmingham__ _____ , __AL__ _____ , or at such other place as the Holder may designate, the principal sum of __FIVE HUNDRED ONE THOUSAND SEVEN HUNDRED FORTY-FOUR AND 05/100__ _____ Dollars, together with interest thereon at the rate provided below from the date of this note (or other interest accrual date shown below) until maturity (whether as originally scheduled or upon acceleration following default), and with interest on the unpaid balance of the principal sum (plus accrued but unpaid interest at maturity, to the extent permitted by law) at the rate which is 2 percent per annum in excess of the rate provided below or the maximum rate allowed by law, whichever is less, from maturity until said indebtedness is paid in full. Interest will continue to accrue daily on the entire unpaid balance of the principal sum of this note until each payment under this note is received by the Holder at the address provided above. Interest will accrue beginning on the date of this note unless another date is shown here: _____ , _____ .

**INTEREST RATE.**
____ Variable Rate     Interest will accrue on the above-stated principal sum as follows (mark applicable provision):
                       Interest will accrue on the above-stated principal sum at the rate per annum which is _____ percentage points in excess of the Index Rate. Unless another rate is made applicable below, the "Index Rate" is the rate of interest designated by the Bank periodically as its Base Rate. The Base Rate is not necessarily the lowest rate charged by the Bank. The Base Rate on the date of this note is _____ percent.
                       ____ (check line if applicable) The "Index Rate" is the weekly auction average yield of _____ - week U.S. Treasury Bills at the most recent auction prior to the date the interest rate payable under this note is calculated. The Index Rate on the date of this note is _____ percent.
                       The rate of interest payable under this note will change to reflect any change in the Index Rate:
                       ____ on any day the Index Rate changes.                    ____ on the _____ day of each month hereafter.
                       ____ on the day each payment of interest is due as provided below.   _____ _____
                       Obligors may prepay this note in full at any time without penalty.

__X__ Fixed Rate      Interest will accrue on the above-stated principal sum at the rate of _____ __7.75__ _____ percent per annum.
                       Interest on the principal sum will be calculated at the rate set forth above on the basis of a ___360__ - day year and the actual number of days elapsed by multiplying the principal sum by the per annum rate set forth above, multiplying the product thereof by the actual number of days elapsed, and dividing the product so obtained by __360__ .

**PAYMENT SCHEDULE.**     The above-stated principal sum and interest thereon shall be paid as follows (mark applicable provision):
____ Installments of     The Obligors promise to pay the above-stated principal sum in _____ consecutive
Principal, Interest      ____ monthly installments     ____ quarterly installments     ____ _____ installments   in the amount of
Paid Separately          $ _____ each, beginning _____ , _____ and continuing on the same day of each month, quarter, or other period (as applicable) thereafter until _____ , _____ at which time a final installment in the amount of the unpaid balance of the principal sum and all accrued but unpaid interest thereon shall be due and payable.
                         The Obligors promise to pay accrued interest on the principal sum:
                         ____ monthly          ____ quarterly                                                 beginning
                         _____ , _____ and continuing on the same day of each month, quarter, or other period (as applicable) thereafter until final maturity of the principal sum.

__X__ Installments of    The Obligors promise to pay the above-stated principal sum and interest thereon in _____ __239__ _____ consecutive
Principal and Interest   __X__ monthly installments     ____ quarterly installments     ____ _____ installments   in the amount of
                         $ _____ __4,154.56__ _____ each, beginning __SEPTEMBER 24__ , __1999__ and continuing on the same day of each month, quarter, or other period (as applicable) thereafter until __AUGUST 24__ , __2019__ at which time a final installment in the amount of the unpaid balance of the principal sum and all accrued but unpaid interest thereon shall be due and payable.

All payments under this note shall be made in U.S. dollars and in immediately available funds at the place where payment is due.

**LOAN FEE.** (This provision applicable only if completed):
A loan fee in the amount of $ _____ __100.00__ _____ has been __X__ included in the amount of this note and paid to the Bank from the loan proceeds.
____ paid to the Bank by cash or check at closing. The loan fee is earned by the Bank when paid and is not subject to refund except to the extent required by law.

**LATE CHARGE.**
If any scheduled payment is in default 10 days or more, Obligors agree to pay a late charge equal to 5% of the amount of the payment which is in default, but not less than $.50 or more than the maximum allowed by applicable law. The preceding sentence does not apply if the original principal amount of this Note is less than $2,000.

**PREPAYMENT.**
If the interest rate on this note is a variable rate, Obligors may prepay this note in full at any time without premium or penalty. If the interest rate on this note is a fixed rate, unless the paragraph which follows is applicable, prepayment of the principal sum of this note in whole or in part is not permitted.

____ If this line is marked, and if the interest rate on this note is a fixed rate, Obligors may not prepay this note in whole or in part during the first year after the date of this note unless the Holder consents. Thereafter, prepayment will be permitted on any scheduled payment date on condition that the amount of the prepayment must equal the sum of (a) the principal amount prepaid plus (b) accrued interest on the amount prepaid plus (c) a premium equal to 1% of the principal amount prepaid multiplied times the number of years or parts of a year remaining until final scheduled maturity of this note. No prepayment premium need be paid if prepayment is made within one year prior to the final scheduled maturity of this note. As used in this paragraph, "prepayment" includes payment following acceleration of the maturity of this note after default by Obligors if the Obligors were able to pay as agreed but failed to pay in order to induce the Holder to accelerate the maturity of this note.
" prepayment in full without penalty or premium is required to be permitted by applicable law, the foregoing provisions will not apply and prepayment will be allowed in cordance with such law.

SA53490 Rev. 8/92          **The provisions on pages 2 through 4 are a part of this note.**          Page 1 of 4 _____ Initials

## Additional Terms and Conditions of Installment Note
### (Terms Continued from Page 1)

COLLATERAL.
This note is secured by every security agreement, pledge, assignment, stock power, mortgage, deed of trust, security deed and/or other instrument covering personal or real property (all of which are hereinafter included in the term "Separate Agreements") which secures an obligation so defined as to include this note, including without limitation all such Separate Agreements which are of even date herewith and/or described in the space below. In addition, as security for the payment of any and all liabilities and obligations of the Obligors to the Holder (including this note and the indebtedness evidenced by this note and all extensions, renewals and modifications thereof, and all writings delivered in substitution therefor) and all claims of every nature of the Holder against the Obligors, whether present or future, and whether joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, direct or indirect (all of the foregoing are hereinafter included in the term "Obligations"), the Obligors hereby assign to the Holder and grant to the Holder a security interest in and security title to the property (the "Collateral") described below: (Describe Separate Agreements and Collateral.)

REAL ESTATE MORTGAGE DATED APRIL 21, 1999, AND ASSIGNMENT OF LIFE INSURANCE
POLICY OF $1,000,000 EACH ON CARL PHILLIPS AND LESLIE V CLAUD, JR.

The Obligors are jointly and severally liable for the payment of this note and have subscribed their names hereto without condition that anyone else should sign or become bound hereon and without any other condition whatever being made. The provisions printed on pages 3 through 4 are a part of this note. The provisions of this note are binding on the heirs, executors, administrators, successors and assigns of each and every Obligor and shall inure to the behalf of the Holder, its successors and assigns. This note is executed under the seal of each of the Obligors and of the indorsers, if any, with the intention that it be an instrument under seal.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

Address of Obligor:

P O BOX 46

ARITON, AL 36311

No.

ficer:   KEITH D PETTY AEX

Branch:   OZARK 147

SA53490 Rev. 8/92

SOUTHTECH ENTERPRISES, L.L.C.                    [L.S.]

By _Carl Phillips_____

   CARL PHILLIPS,                          Title

Signature _Leslie V Claud_____     [L.S.]

   LESLIE V. CLAUD, JR.,

Signature _____     [L.S.]

Page 2 of 4 _____ Initials

## Additional Terms and Conditions of Installment Note
### (Terms Continued from Page 2)

If the Obligors fail to pay any installment of principal or interest or any other sum under this note exactly when it is due or fail to perform any other covenant under this Note when due (time being of the essence of every term of this note); or if any of the Obligors shall fail to pay any other debt or obligation to the Holder exactly when due; or if any of the Obligors or any guarantor or indorser of this note shall die (if an individual) or dissolve or cease to do business (if a partnership or corporation); or if any of the Obligors or any guarantor or indorser of this note becomes insolvent, or makes a general assignment for the benefit of creditors, or files or has filed against him, her, or it a petition under any chapter of the United States Bankruptcy Code, or files or has filed against him, her, or it an application in any court for the appointment of a receiver or trustee for any substantial part of his, hers, or its property or assets; or if a judgment or arbitration award is entered against any of the Obligors or any such guarantor or indorser or a levy, writ of execution, attachment, garnishment, seizure or similar writ or judicial process is issued against any of the Obligors or any such guarantor or indorser or any of his, hers, or its property or assets; or if any Obligor, Indorser or guarantor of this note transfers all or any valuable part of his, her or its assets outside the ordinary course of business, or wastes, loses, or dissipates or permits waste, loss or dissipation of any valuable part of such property or assets; or if any Obligor, indorser or guarantor of this note is a partnership, and any general partner of such partnership withdraws or is removed; or if any Obligor, indorser or guarantor of this note is a corporation and ownership or power to vote more than 50 percent of the voting stock of such corporation is transferred, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), during any 12 month period; or if any default or breach occurs under any of the Separate Agreements; or if any of the Obligors or any indorser or guarantor breaches any subordination agreement or intercreditor agreement made with or for the benefit of the Holder; or if at any time in its judgment the Holder the prospect of payment or performance by any Obligor or any guarantor or indorser of this note becomes impaired, then, if any of the foregoing shall occur, the entire unpaid principal sum of this note and all accrued but unpaid interest thereon shall, at the option of the Holder and without requirement of notice or demand, become due and payable immediately, notwithstanding any time or credit allowed under this note or under any other agreement made by the Holder with the Obligors.

Each Obligor and each guarantor and indorser agrees (a) in the event such Obligor, guarantor or indorser is other than an individual, to furnish the Holder at least annually, within 120 days after the end of each calendar year or other fiscal year of such entity, a current financial statement, including a balance sheet and statements of income, cash flows and changes in capital for such year, setting forth in each case in comparative form the corresponding figures for the previous year, together with accompanying schedules and footnotes along with the accountant's letter accompanying the financial statements (if the financial statements were compiled or certified by a public accountant), such financial statements to be certified by the chief executive officer, chief financial officer, managing partner or comparable financial officer of such Obligor, guarantor or indorser to be true and complete to the best of his or her knowledge and information and to have been prepared in accordance with generally accepted accounting principles, or, if not so prepared, setting forth the manner in which such financial statement departs from generally accepted accounting principles; (b) in the event such Obligor, guarantor or indorser is an individual, to furnish the Holder at least annually, within 90 days after each anniversary date of this note, a personal financial statement in form satisfactory to the Holder, certified by such person to be true and complete to the best of his or her knowledge and belief, and to furnish the Holder, within 30 days after the Holder's request therefor, a copy of the federal income tax return most recently filed by such person; and (c) that this paragraph applies in addition to and not in lieu of any other agreement with the Holder which requires the furnishing of financial information.

As additional Collateral for the payment of all Obligations, the Obligors jointly and severally transfer, assign, pledge, and set over to the Holder, and grant the Holder a continuing lien upon and security interest in, any and all property of each Obligor that for any purpose, whether in trust by any Obligor or for custody, pledge, collection or otherwise, is now or herafter in the actual or constructive possession of, or in transit to, the Holder in any capacity, its correspondents or agents, and also a continuing lien upon and right of set-off against deposits and credits of each Obligor with, and all claims of each Obligor against, the Holder now or at any time hereafter existing. The Holder is hereby authorized at any time or times and without prior notice to apply such property, deposits, credits, and claims, in whole or in part and in such order as the Holder may elect, to the payment of, or as a reserve against, one or more of the Obligations, whether other Collateral therefor is deemed adequate or not. All such property, deposits, credits and claims of the Obligors are included in the term Collateral, and the Holder shall have (unless prohibited by law) the same rights with respect to such Collateral as it has with respect to other Collateral.

Without the necessity for any further notice to or consent of any Obligor, the Holder may exercise any rights of any of the Obligors with respect to the Collateral, including without limitation thereto the following rights: (1) to record or register in, or otherwise transfer into, the name of the Holder or its nominee any part of the Collateral, without disclosing that the Holder's interest is that of a secured party; (2) to pledge or otherwise transfer any or all of the Obligations and/or Collateral, whereupon any pledgee or transferee shall have all the rights of the Holder hereunder, and the Holder shall thereafter be fully discharged and relieved from all responsibility and liability for the Collateral so transferred but shall retain all rights and powers thereunder as to all Collateral not so transferred; (3) to take possession of any Collateral and to receive any proceeds of and dividends and income on any Collateral, including money, and to hold the same as Collateral or apply the same to any of the Obligations, the manner, order and extent of such application to be in the sole discretion of the Holder; (4) to exercise any and all rights of voting, conversion, exchange, subscription and other rights or options pertaining to any Collateral; and (5) to liquidate, demand, sue for, collect, compromise, receive and give receipt for the cash or surrender value of any Collateral. If for any reason whatsoever the Collateral shall cease to be satisfactory to the Holder, the Obligors shall upon demand deposit with the Holder additional Collateral satisfactory to the Holder. Surrender of this note, upon payment or otherwise, shall not affect the right of the Holder to retain the Collateral as security for other Obligations. Upon default, the Obligors agree to assemble the Collateral and make it available to Holder at such place or places as the Holder shall designate.

The Holder shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral which is in its possession if it takes such reasonable actions for that purpose as the pledgor of such Collateral shall request in writing, but the Holder shall have the sole discretion to determine whether such actions are reasonable. Any omission to do any act not requested by the pledgor shall not be deemed a failure to exercise reasonable care. The Obligors shall be responsible for the preservation of the Collateral and shall take all steps to preserve rights against prior parties. The Holder shall not be liable for, and no Obligor, indorser, or guarantor shall be discharged to any extent on account of, any failure to realize upon, or to exercise any right or power with respect to, any of the Obligations or Collateral, or for any delay in so doing.

The Holder, without making any demand whatsoever, shall have the right to sell all or any part of the Collateral, although the Obligations may be contingent or unmatured, whenever the Holder considers such sale necessary for its protection. Sale of the Collateral may be made, at any time and from time to time, at any public or private sale, at the option of the Holder, without advertisement or notice to any Obligor, except such notice as is required by law and cannot be waived. The Holder may purchase the Collateral at any such sale (unless prohibited by law) free from any equity of redemption and from all other claims. After deducting all expenses including legal expenses and attorney's fees as provided below, for maintaining or selling the Collateral and collecting the proceeds of sale, the Holder shall have the right to apply the remainder of said proceeds in payment of, or as a reserve against, any of the Obligations, the manner, order and extent of such application to be in the sole discretion of the Holder. To the extent notice of any sale or other disposition of the Collateral is required by law to be given to any Obligor and cannot be waived, the requirement of reasonable notice shall be met by sending such notice, as provided below, at least ten (10) calendar days before the time of sale or disposition. The Obligor shall remain liable to the Holder for the payment of any deficiency with interest at the rate provided hereinabove. However, the Holder shall not be obligated to resort to any Collateral but, at its election, may proceed to enforce any of the Obligations in default against any or all of the Obligors.

With respect to any and all Obligations, to the extent permitted by applicable law, the Obligors and any indorsers of this note jointly and severally waive the following: (1) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the constitution and laws of the United States or of any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold any Obligor or indorser liable on any Obligation; (3) any further receipt for or acknowledgement of the Collateral now or hereafter deposited and any statement of indebtedness; (4) all statutory provisions and requirements for the benefit of any Obligor or indorser, now or hereafter in force (to the extent that same may be waived); (5) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Holder and any Obligor or indorser shall be adverse parties; and (6) notice of any intended public or private sale or sales or other intended disposition by the Holder of the Collateral or any part thereof. The Obligors and indorsers agree that any obligations of any Obligor or indorser may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, discharged or released by the Holder, and any collateral, security interest, lien and/or right of set-off securing any Obligation may from time to time, in whole or in part, be exchanged, sold, released, or otherwise impaired, all without notice to or further reservations of rights against any Obligor or any other person and all without in any way affecting or discharging the liability of any Obligor or indorser.

Initials

## Additional Terms and Conditions of Installment Note
### (Terms Continued from Page 3)

The Obligors jointly and severally agree to pay all filing fees and taxes in connection with this note or the Collateral and all costs of collecting or securing or attempting to collect or secure any of the Obligations, including an attorney's fee in the amount which is 15% of the unpaid balance of this note if an attorney who is not a salaried employee of the Holder is consulted with reference to suit, bankruptcy proceedings, or otherwise following any default hereunder by the Obligors.

The Holder shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies. No officer or agent of the Holder has the authority to amend or waive any of the terms of this note orally, and no amendment or waiver of any kind shall be valid unless in writing and signed by the Holder. All rights and remedies of the Holder under the terms of this note under the Separate Agreements, and under statutes or rules of law are cumulative and may be exercised successively or concurrently. The Obligors jointly and severally agree that the Holder shall be entitled to all rights of a holder in due course of a negotiable instrument. This note shall be governed by and construed in accordance with the substantive laws of the United States and the state where the office of the Bank set forth on page 1 in the first paragraph of this note is located, without regard to the rules of such state governing conflicts of law. Any provision of this note which may be unenforceable or invalid under applicable law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof. Any notice required to be given to any person shall be deemed sufficient if delivered to such person or if mailed, postage prepaid, to such person's address as it appears on this note or, if none appears, to any address of such person in the Holder's files. The Holder shall have the right to correct patent errors in this note. A photocopy of this note may be filed as a financing statement in any public office.

The Obligors understand that the Bank may enter into participation agreements with participating banks whereby the Bank will sell undivided interests in this note to such other banks. The Obligors consent that the Bank may furnish information regarding the Obligors, including financial information, to such banks from time to time and also to prospective participating banks in order that such banks may make an informed decision whether to purchase a participation in this note. The Obligors hereby grant to each such participating bank, to the extent of its participation in this note, the right to apply deposit accounts maintained by the Obligors, or any of them, with such bank, against unpaid sums owed under this note. Upon written request from the Holder, the Obligors agree to make each payment under this note directly to each such participating bank in proportion to the participant's interest in this note as set forth in such request from the Holder.

If, at any time, the rate or amount of interest, late charge, attorney's fee or any other charge payable under this note shall exceed the maximum rate or amount permitted by applicable law, then, for such time as such rate or amount would be excessive, its application shall be suspended and there shall be charged instead the maximum rate or amount permitted under such law, and any excess interest or other charge paid by the Obligors or collected by the Holder shall be refunded to the Obligors or credited against the principal sum of this note, at the election of the Holder or as required by applicable law. Obligors agree that the late charge provided in this note is a reasonable estimate of probable additional unanticipated internal costs to the Holder of reporting, accounting for, and collecting the late payment, that such costs are difficult or impossible to estimate accurately, and that the agreement to pay a late charge is a reasonable liquidated damages provision.

The provisions of this paragraph shall control, when applicable, notwithstanding any provision of this note to the contrary: If the Obligors are one or more natural persons and the loan is used for personal, family, or household use other than for the purchase of real property, the following provisions are applicable: (a) the waivers of exemption of property from levy or sale under execution or other process for the collection of debts, as hereinabove provided, applies only with respect to the Collateral, if any, for this note; (b) to the extent that any Separate Agreement covers property which is "household goods", as that term is defined in 12 C.F.R. Section 227.12(d), and to the extent the proceeds of the loan evidenced by this note were not used to purchase such property, such "household goods" do not constitute any part of Collateral for the Obligations, and (c) whether or not the loan is used to purchase real property, no consumer protection provision of applicable law and no limitation on the remedy of garnishment provided under federal or state law is waived hereby. If the proceeds of the loan evidenced by this note are used primarily for personal, family, household or agricultural purposes, and if Alabama law governs this note, the agreement hereinabove made to pay an attorney's fee for collection following default applies only if the original principal balance of the loan exceeds $300, and the attorney's fee shall be a reasonable fee not exceeding 15% of the unpaid balance of this note after default and referral of this note to an attorney, not a salaried employee of the Holder, for collection. If the proceeds of the loan evidenced by this note are used primarily for personal, family, or household use, and if any of the Separate Agreements grants the Holder a lien on or title to the principal dwelling of any of the Obligors, the Holder waives the benefit of such Obligor's principal dwelling as security for the Obligations, unless such Separate Agreement is specifically described on page 2 of this note.

EACH INDORSER OF THIS NOTE AGREES TO BE BOUND BY THE PROVISIONS PRINTED OR OTHERWISE APPEARING ABOVE AND ON THE FACE OF THIS NOTE, INCLUDING THE PROVISION FOR PAYMENT OF ATTORNEYS' FEES FOR COLLECTION.

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

Signature _____ [L.S.]

Address _____

Signature _____ [L.S.]

Address _____

EXHIBIT "B"

**ALLONGE**

**(Asset 3100)**

This Allonge, dated as of May __19__, 2006, is attached to and made part of the following instrument:

> Installment Note dated August 24, 1999 executed by Southtech Enterprises, LLC in favor of SouthTrust Bank, National Association in the original principal amount of $501,744.05, as affected by that certain Forbearance Agreement dated January 11, 2006 between SouthTech Enterprises, LLC, SouthTech Industries, Inc., Carl A. Phillips, Jann C. Phillips, Charles F. Carter, III, Shannon Marie Carter and Wachovia Bank, National Association, successor by merger to SouthTrust Bank, National Association.

for the purpose of annexing thereto the following endorsement:

> Pay to the order of **CAPITAL CROSSING BANK** ("Buyer"), its successors and assigns, WITHOUT REPRESENTATION, WARRANTY OR RECOURSE OF ANY NATURE WHATSO- EVER, WHETHER EXPRESSED OR IMPLIED, except and only to the extent otherwise provided in that certain Asset Sale Agreement, dated May __9__, 2006, between Buyer and Wachovia Bank, National Association.

**WACHOVIA BANK, NATIONAL ASSOCIATION,** successor by merger to SouthTrust Bank, National Association

By: _____
Margaret B. Flight
Vice President

JACK_537344.1

**EXHIBIT "C"**

$ 500,212.00        Birmingham    ,   AL        AUGUST 24   , 1999
                                                    (City)          (State)           (Date)

For value received, the undersigned (whether one or more, hereinafter called the "Obligors") promise(s) to pay to the order of _____ SouthTrust Bank, National Association _____ (hereinafter called the "Bank" or, together with any other holder of this note, the "Holder"), at any office of the Bank in __Birmingham__ , __AL__ , or at such other place as the Holder may designate, the principal sum of __FIVE HUNDRED THOUSAND TWO HUNDRED TWELVE AND NO/100__ Dollars, together with interest thereon at the rate provided below from the date of this note (or other interest accrual date shown below) until maturity (whether as originally scheduled or upon acceleration following default), and with interest on the unpaid balance of the principal sum (plus accrued but unpaid interest at maturity, to the extent permitted by law) at the rate which is 2 percent per annum in excess of the rate provided below or the maximum rate allowed by law, whichever is less, from maturity until said indebtedness is paid in full. Interest will continue to accrue daily on the entire unpaid balance of the principal sum of this note until each payment under this note is received by the Holder at the address provided above. Interest will accrue beginning on the date of this note unless another date is shown here: _____ , _____

**INTEREST RATE.**

____ Variable Rate    Interest will accrue on the above-stated principal sum as follows (mark applicable provision):

Interest will accrue on the above-stated principal sum at the rate per annum which is _____ percentage points in excess of the Index Rate. Unless another rate is made applicable below, the "Index Rate" is the rate of interest designated by the Bank periodically as its Base Rate. The Base Rate is not necessarily the lowest rate charged by the Bank. The Base Rate on the date of this note is _____ percent.

____ (check line if applicable) The "Index Rate" is the weekly auction average yield of ____ - week U.S. Treasury Bills at the most recent auction prior to the date the interest rate payable under this note is calculated. The Index Rate on the date of this note is _____ percent.

The rate of interest payable under this note will change to reflect any change in the Index Rate:

____ on any day the Index Rate changes.

____ on the day each payment of interest is due as provided below.    ____ on the _____ day of each month hereafter.

Obligors may prepay this note in full at any time without penalty.

__X__ Fixed Rate    Interest will accrue on the above-stated principal sum at the rate of _____ 8.50 _____ percent per annum.

Interest on the principal sum will be calculated at the rate set forth above on the basis of a __360__ - day year and the actual number of days elapsed by multiplying the principal sum by the per annum rate set forth above, multiplying the product thereof by the actual number of days elapsed, and dividing the product so obtained by __360__ .

**PAYMENT SCHEDULE.**    The above-stated principal sum and interest thereon shall be paid as follows (mark applicable provision):

____ Installments of principal, Interest Paid Separately

The Obligors promise to pay the above-stated principal sum in _____ consecutive

____ monthly installments    ____ quarterly installments     _____ installments in the amount of $ _____ each, beginning _____ , _____ and continuing on the same day of each month, quarter, or other period (as applicable) thereafter until _____ , _____ at which time a final installment in the amount of the unpaid balance of the principal sum and all accrued but unpaid interest thereon shall be due and payable.

The Obligors promise to pay accrued interest on the principal sum:

____ monthly    ____ quarterly       _____ beginning _____ , _____ and continuing on the same day of each month, quarter, or other period (as applicable) thereafter until final maturity of the principal sum.

__X__ Installments of Principal and Interest

The Obligors promise to pay the above-stated principal sum and interest thereon in _____ 119 consecutive

__x__ monthly installments    ____ quarterly installments     _____ installments in the amount of $ _____ 6,235.88 _____ each, beginning __SEPTEMBER 24__ , __1999__ and continuing on the same day of each month, quarter, or other period (as applicable) thereafter until __AUGUST 24__ , __2009__ at which time a final installment in the amount of the unpaid balance of the principal sum and all accrued but unpaid interest thereon shall be due and payable.

All payments under this note shall be made in U.S. dollars and in immediately available funds at the place where payment is due.

**LOAN FEE.** (This provision applicable only if completed)

A loan fee in the amount of $ _____ 100.00 _____ has been __X__ included in the amount of this note and paid to the Bank from the loan proceeds. ____ paid to the Bank by cash or check at closing. The loan fee is earned by the Bank when paid and is not subject to refund except to the extent required by law.

**LATE CHARGE.**

If any scheduled payment is in default 10 days or more, Obligors agree to pay a late charge equal to 5% of the amount of the payment which is in default, but not less than $.50 or more than the maximum amount allowed by applicable law. The preceding sentence does not apply if the original principal amount of this Note is less than $2,000.

**PREPAYMENT.**

If the interest rate on this note is a variable rate, Obligors may prepay this note in full at any time without premium or penalty. If the interest rate on this note is a fixed rate, the paragraph which follows is applicable, prepayment of the principal sum of this note in whole or in part is not permitted.

____ If this line is marked, and if the interest rate on this note is a fixed rate, Obligors may not prepay this note in whole or in part during the first year after the date of this note unless the Holder consents. Thereafter, prepayment will be permitted on any scheduled payment date on condition that the amount of the prepayment must equal the sum of (a) the principal amount prepaid plus (b) accrued interest on the amount prepaid plus a premium equal to 1% of the principal amount prepaid multiplied times the number of years or parts of a year remaining until final scheduled maturity of this note. No prepayment premium need be paid if prepayment is made within one year [p]__ to the final scheduled maturity of this note. As used in this paragraph, "prepayment" includes payment following acceleration of the maturity of this note after default by [O]bligors if the Obligors were able to pay as agreed but failed to pay in order to induce the Holder to accelerate the maturity of this note. [If] prepayment in full without penalty or premium is required to be permitted by applicable law, the foregoing provisions will not apply and prepayment will be allowed in accordance with such law.

SA53490 Rev. 8/92            **The provisions on pages 2 through 4 are a part of this note.**          Page 1 of 4 _____ initials

## Additional Terms and Conditions of Installment Note
### (Terms Continued from Page 1)

COLLATERAL.
This note is secured by every security agreement, pledge, assignment, stock power, mortgage, deed of trust, security deed and/or other instrument covering personal or property (all of which are hereinafter included in the term "Separate Agreements") which secures an obligation so defined as to include this note, including without limitation all such Separate Agreements which are of even date herewith and/or described in the space below. In addition, as security for the payment of any and all liabilities and obligations of the Obligors to the Holder (including this note and the indebtedness evidenced by this note and all extensions, renewals and modifications thereof, and all writings delivered in substitution therefor) and all claims of every nature of the Holder against the Obligors, whether present or future, and whether joint or several, absolute or contingent, matured or unmatured, liquidated or unliquidated, direct or indirect (all of the foregoing are hereinafter included in the term "Obligations"), the Obligors hereby assign to the Holder and grant to the Holder a security interest in and security title to the property (the "Collateral") described below: (Describe Separate Agreements and Collateral.)

SECURITY AGREEMENT DATED APRIL 21, 1999, COVERING EQUIPMENT AND ASSIGNMENT
OF LIFE INSURANCE POLICY OF $1,000.000 EACH ON LESLIE V. CLAUD, AND
CARL PHILLIPS.

The Obligors are jointly and severally liable for the payment of this note and have subscribed their names hereto without condition that anyone else should sign or become bound hereon and without any other condition whatever being made. The provisions printed on pages 3 through 4 are a part of this note. The provisions of this note are binding on the heirs, executors, administrators, successors and assigns of each and every Obligor and shall inure to the behalf of the Holder, its successors and assigns. This note is executed under the seal of each of the Obligors and of the indorsers, if any, with the intention that it be an instrument under seal.

**CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Address of Obligor:

P O BOX 720

ARITON, AL 36311

N:
O      : KEITH D PETTY AEX
Branch:  OZARK 147

SA53490 Rev. 8/92

SOUTHTECH INDUSTRIES, INC.                    [L.S.]

By _Carl Phillips_

CARL PHILLIPS, PRESIDENT          Title

Signature _____          [L.S.]

Signature _____          [L.S.]

Page 2 of 4  _____  Initials

If the Obligors fail to pay any installment of principal or interest or any other sum under this note exactly when it is due or fail to perform any other covenant under this Note when due (time being of the essence of every term of this note); or if any of the Obligors shall fail to pay any other debt or obligation to the Holder exactly when due; or if any of the Obligors or any guarantor or indorser of this note shall die (if an individual) or dissolve or cease to do business (if a partnership or corporation); or if any of the Obligors or any guarantor or indorser of this note becomes insolvent, or makes a general assignment for the benefit of creditors, or files or has filed against him, her, or it a petition under any chapter of the United States Bankruptcy Code, or files or has filed against him, her, or it an application in any court for the appointment of a receiver or trustee for any substantial part of his, hers, or its property or assets; or if a judgment or arbitration award is entered against any of the Obligors or any such guarantor or indorser or a levy, writ of execution, attachment, garnishment, seizure or similar writ or judicial process is issued against any of the Obligors or any such guarantor or indorser or any of his, hers, or its property or assets; or if any Obligor, indorser or guarantor of this note transfers all or any valuable part of his, her or its assets outside the ordinary course of business, or wastes, loses, or dissipates or permits waste, loss or dissipation of any valuable part of such person's assets; or if any Obligor, indorser or guarantor of this note is a partnership, and any general partner of such partnership withdraws or is removed; or if any Obligor, indorser or guarantor of this note is a corporation and ownership or power to vote more than 50 percent of the voting stock of such corporation is transferred, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), during any 12 month period; or if any default or breach occurs under any of the Separate Agreements; or if any of the Obligors or any indorser or guarantor breaches any subordination agreement or intercreditor agreement made with or for the benefit of the Holder; or if at any time in the opinion of the Holder the prospect of payment or performance by any Obligor or any guarantor or indorser of this note becomes impaired, then, if any of the foregoing shall occur, the entire unpaid principal sum of this note and all accrued but unpaid interest thereon shall, at the option of the Holder and without requirement of notice or demand, become due and payable immediately, notwithstanding any time or credit allowed under this note or under any other agreement made by the Holder with the Obligors.

Each Obligor and each guarantor and indorser agrees (a) in the event such Obligor, guarantor or indorser is other than an individual, to furnish the Holder at least annually, within 120 days after the end of each calendar year or other fiscal year of such entity, a current financial statement, including a balance sheet and statements of income, cash flows and changes in capital for such year, setting forth in each case in comparative form the corresponding figures for the previous year, together with accompanying schedules and footnotes along with the accountant's letter accompanying the financial statements (if the financial statements were compiled or certified by a public accountant), such financial statements to be certified by the chief executive officer, chief financial officer, managing partner or comparable financial officer of such Obligor, guarantor or indorser to be true and complete to the best of his or her knowledge and information and to have been prepared in accordance with generally accepted accounting principles, or, if not so prepared, setting forth the manner in which such financial statement departs from generally accepted accounting principles; (b) in the event such Obligor, guarantor or indorser is an individual, to furnish the Holder at least annually, within 90 days after each anniversary date of this note, a personal financial statement in form satisfactory to the Holder, certified by such person to be true and complete to the best of his or her knowledge and belief, and to furnish the Holder, within 30 days after the Holder's request therefor, a copy of the federal income tax return most recently filed by such person; and (c) that this paragraph applies in addition to and not in lieu of any other agreement with the Holder which requires the furnishing of financial information.

As additional collateral for the payment of all Obligations, the Obligors jointly and severally transfer, assign, pledge, and set over to the Holder, and grant the Holder a continuing lien upon and security interest in, any and all property of each Obligor that for any purpose, whether in trust for any Obligor or for custody, pledge, collection or otherwise, is now or hereafter in the actual or constructive possession of, or in transit to, the Holder in any capacity, its correspondents or agents, and also a continuing lien upon and right of set-off against deposits and credits of each Obligor with, and all claims of each Obligor against, the Holder now or at any time hereafter existing. The Holder is hereby authorized at any time or times and without prior notice to apply such property, deposits, credits, and claims, in whole or in part and in such order as the Holder may elect, to the payment of, or as a reserve against, one or more of the Obligations, whether other Collateral therefor is deemed adequate or not. All such property, deposits, credits and claims of the Obligors are included in the term Collateral, and the Holder shall have (unless prohibited by law) the same rights with respect to such Collateral as it has with respect to other Collateral.

Without the necessity for any further notice to or consent of any Obligor, the Holder may exercise any rights of any of the Obligors with respect to any Collateral, including without limitation thereto the following rights: (1) to record or register in, or otherwise transfer into, the name of the Holder or its nominee any part of the Collateral, without disclosing that the Holder's interest is that of a secured party; (2) to pledge or otherwise transfer any or all of the Obligations and/or Collateral, whereupon any assignee or transferee shall have all the rights of the Holder hereunder, and the Holder shall thereafter be fully discharged and relieved from all responsibility and liability for Collateral so transferred but shall retain all rights and powers thereunder as to all Collateral not so transferred; (3) to take possession of any Collateral and to receive any proceeds of and dividends and income on any Collateral, including money, and to hold the same as Collateral or apply the same to any of the Obligations, the manner, order and extent of such application to be in the sole discretion of the Holder; (4) to exercise any and all rights of voting, conversion, exchange, subscription and other rights or options pertaining to any Collateral; and (5) to liquidate, demand, sue for, collect, compromise, receive and give receipt for the cash or surrender value of any Collateral. If for any reason whatsoever the Collateral shall cease to be satisfactory to the Holder, the Obligors shall upon demand deposit with the Holder additional Collateral satisfactory to the Holder. Surrender of this note, upon payment or otherwise, shall not affect the right of the Holder to retain the Collateral as security for other Obligations. Upon default, the Obligors agree to assemble the Collateral and make it available to Holder at such place or places as the Holder shall designate.

The Holder shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral which is in its possession if it takes such reasonable actions for that purpose as the pledgor of such Collateral shall request in writing, but the Holder shall have the sole discretion to determine whether such actions are reasonable. Any omission to do any act not requested by the pledgor shall not be deemed a failure to exercise reasonable care. The Obligors shall be responsible for the preservation of the Collateral and shall take all steps to preserve rights against prior parties. The Holder shall not be liable for, and no Obligor, indorser, or guarantor shall be discharged to any extent on account of, any failure to realize upon, or to exercise any right or power with respect to, any of the Obligations or Collateral, or for any delay in so doing.

The Holder, without making any demand whatsoever, shall have the right to sell all or any part of the Collateral, although the Obligations may be contingent or unmatured, whenever the Holder considers such sale necessary for its protection. Sale of the Collateral may be made, at any time and from time to time, at any public or private sale, at the option of the Holder, without advertisement or notice to any Obligor, except such notice as is required by law and cannot be waived. The Holder may purchase the Collateral at any such sale (unless prohibited by law) free from any equity of redemption and from all other claims. After deducting all expenses including legal expenses and attorney's fees as provided below, for maintaining or selling the Collateral and collecting the proceeds of sale, the Holder shall have the right to apply the remainder of said proceeds in payment of, or as a reserve against, any of the Obligations, the manner, order and extent of such application to be in the sole discretion of the Holder. To the extent notice of any sale or other disposition of the Collateral is required by law to be given to any Obligor and cannot be waived, the requirement of reasonable notice shall be met by sending such notice, as provided below, at least ten (10) calendar days before the time of sale or disposition. The Obligor shall remain liable to the Holder for the payment of any deficiency with interest at the rate provided hereinabove. However, the Holder shall not be obligated to resort to any Collateral but, at its election, may proceed to enforce any of the Obligations in default against any or all of the Obligors.

With respect to any and all Obligations, to the extent permitted by applicable law, the Obligors and any indorsers of this note jointly and severally waive the following: (1) all rights of exemption of property from levy or sale under execution or other process for the collection of debts under the constitution and laws of the United States or of any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold any Obligor or indorser liable on any Obligation; (3) any further receipt for or acknowledgement of the Collateral now or hereafter deposited and any statement of indebtedness; (4) all statutory provisions and requirements for the benefit of any Obligor or indorser, now or hereafter in force (to the extent that same may be waived); (5) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Holder and any Obligor or indorser shall be adverse parties; and (6) notice of any intended public or private sale or sales or other intended disposition by the Holder of the Collateral or any part thereof. The Obligors and indorsers agree that any of the ... ions of any Obligor or indorser may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, discharged or released by th.. ..older, and any collateral, security interest, lien and/or right of set-off securing any Obligation may from time to time, in whole or in part, be exchanged, sold, released, or otherwise impaired, all without notice to or further reservations of rights against any Obligor or any other person and all without in any way affecting or discharging the liability of any Obligor or indorser.

SA53490 Rev. 8/92

The Obligors jointly and severally agree to pay all filing fees and taxes in connection with this note or the Collateral and all costs of collecting or securing or attempting to collect or secure any of the Obligations, including an attorney's fee in the amount which is 15% of the unpaid balance of this note if an attorney who is not a salaried employee of the Holder is consulted or the Holder is consulted with reference to suit, bankruptcy proceedings, or otherwise following any default hereunder by the Obligors.

The Holder shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies. No officer or agent of the Holder has the authority to amend or waive any of the terms of this note orally, and no amendment or waiver of any kind shall be valid unless in writing and signed by the Holder. All rights and remedies of the Holder under the terms of this note and under the Separate Agreements, and under statutes or rules of law are cumulative and may be exercised successively or concurrently. The Obligors jointly and severally agree that the Holder shall be entitled to all rights of a holder in due course of a negotiable instrument. This note shall be governed by and construed in accordance with the substantive laws of the United States and the state where the office of the Bank set forth on page 1 in the first paragraph of this note is located, without regard to the rules of such state governing conflicts of law. Any provision of this note which may be unenforceable or invalid under applicable law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof. Any notice required to be given to any person shall be deemed sufficient if delivered to such person or if mailed, postage prepaid, to such person's address as it appears on this note or, if none appears, to any address of such person in the Holder's files. The Holder shall have the right to correct patent errors in this note. A photocopy of this note may be filed as a financing statement in any public office.

The Obligors understand that the Bank may enter into participation agreements with participating banks whereby the Bank will sell undivided interests in this note to such other banks. The Obligors consent that the Bank may furnish information regarding the Obligors, including financial information, to such banks from time to time and also to prospective participating banks in order that such banks may make an informed decision whether to purchase a participation in this note. The Obligors hereby grant to each such participating bank, to the extent of its participation in this note, the right to apply deposit accounts maintained by the Obligors, or any of them, with such bank, against unpaid sums owed under this note. Upon written request from the Holder, the Obligors agree to make each payment under this note directly to each such participating bank in proportion to the participant's interest in this note as set forth in such request from the Holder.

If, at any time, the rate or amount of interest, late charge, attorney's fee or any other charge payable under this note shall exceed the maximum rate or amount permitted by applicable law, then, for such time as such rate or amount would be excessive, its application shall be suspended and there shall be charged instead the maximum rate or amount permitted under such law, and any excess interest or other charge paid by the Obligors or collected by the Holder shall be refunded to the Obligors or credited against the principal sum of this note, at the election of the Holder or as required by applicable law. Obligors agree that the late charge provided in this note is a reasonable estimate of probable additional unanticipated internal costs to the Holder of reporting, accounting for, and collecting the late payment, that such costs are difficult or impossible to estimate accurately, and that the agreement to pay a late charge is a reasonable liquidated damages provision.

The provisions of this paragraph shall control, when applicable, notwithstanding any provision of this note to the contrary: If the Obligors are one or more natural persons and the loan is used for personal, family, or household use other than for the purchase of real property, the following provisions are applicable: (a) the waivers of exemption of property from levy or sale under execution or other process for the collection of debts, as hereinabove provided, applies only with respect to the Collateral, if any, for this note; (b) to the extent that any Separate Agreement covers property which is "household goods", as that term is defined in 12 C.F.R. Section 227.12(d), and to the extent the proceeds of the loan evidenced by this note were not used to purchase such property, such "household goods" do not constitute any part of Collateral for the Obligations, and (c) whether or not the loan is used to purchase real property, no consumer protection provision of applicable law and no limitation on the remedy of garnishment provided under federal or state law is waived hereby. If the proceeds of the loan evidenced by this note are used primarily for personal, family, household or agricultural purposes, and if Alabama law governs this note, the agreement hereinabove made to pay an attorney's fee for collection following default applies only if the original principal balance of the loan exceeds $300, and the attorney's fee shall be a reasonable fee not exceeding 15% of the unpaid balance of this note after default and referral of this note to an attorney, not a salaried employee of the Holder, for collection. If the proceeds of the loan evidenced by this note are used primarily for personal, family, or household use, and if any of the Separate Agreements grants the Holder a lien on or title to the principal dwelling of any of the Obligors, the Holder waives the benefit of such Obligor's principal dwelling as security for the Obligations, unless such Separate Agreement is specifically described on page 2 of this note.

EACH INDORSER OF THIS NOTE AGREES TO BE BOUND BY THE PROVISIONS PRINTED OR OTHERWISE APPEARING ABOVE AND ON THE FACE OF THIS NOTE, INCLUDING THE PROVISION FOR PAYMENT OF ATTORNEYS' FEES FOR COLLECTION.

CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

Signature _____ [L.S.]

Address _____

Signature _____ [L.S.]

Address _____

EXHIBIT "D"

**ALLONGE**

**(Asset 3102)**

This Allonge, dated as of May _19_, 2006, is attached to and made part of the following instrument:

> Installment Note dated August 24, 1999 executed by SouthTech Industries, Inc in favor of SouthTrust Bank, National Association in the original principal amount of $500,212, as affected by that certain Forbearance Agreement dated January 11, 2006 between SouthTech Enterprises, LLC, SouthTech Industries, Inc., Carl A. Phillips, Jann C. Phillips, Charles F. Carter, III, Shannon Marie Carter and Wachovia Bank, National Association, successor by merger to SouthTrust Bank, National Association.

for the purpose of annexing thereto the following endorsement:

> Pay to the order of **CAPITAL CROSSING BANK** ("Buyer"), its successors and assigns, WITHOUT REPRESENTATION, WARRANTY OR RECOURSE OF ANY NATURE WHATSO-EVER, WHETHER EXPRESSED OR IMPLIED, except and only to the extent otherwise provided in that certain Asset Sale Agreement, dated May _9_, 2006, between Buyer and Wachovia Bank, National Association.

**WACHOVIA BANK, NATIONAL ASSOCIATION**, successor by merger to SouthTrust Bank, National Association

By: _Margaret B. Flight_

Margaret B. Flight
Vice President

# EXHIBIT "E"

```
*09900162286900000031857000127*
```

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $250,000.00 | 10-26-2004 | 04-24-2005 | 0000031857 | 00017 705 | 0015226690 | AEX | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  SOUTHTECH INDUSTRIES, INC. (TIN: 63-1215840) HIGHWAY 123 ARITON, AL 36311

**Lender:**  SouthTrust Bank
Commercial Loans Ozark 147
242 West Reynolds Street
P O Box 1049
Ozark, AL  36360
(334) 774-9313

---

**Principal Amount: $250,000.00**          **Initial Rate: 5.750%**          **Date of Note: October 26, 2004**

**PROMISE TO PAY.** SOUTHTECH INDUSTRIES, INC. ("Borrower") promises to pay to SouthTrust Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Fifty Thousand & 00/100 Dollars ($250,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 24, 2005. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning November 24, 2004, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the "Base Rate". The term "base rate" means the rate of interest designated by the Lender periodically as its Base Rate (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each day. The frequency of the rate change is further defined below in paragraph titled "VARIABLE RATE CHANGE FREQUENCY.". Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.750% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 5.750% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: SouthTrust Bank, Commercial Loans Ozark 147, 242 West Reynolds Street, P O Box 1049, Ozark, AL  36360.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, at Lender's option, and if permitted by applicable law, Lender may add any unpaid accrued interest to principal and such sum will bear interest therefrom until paid at the rate provided in this Note. Upon default, the total sum due under this Note will bear interest from the date of acceleration or maturity at the variable interest rate on this Note. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon the occurrence of any default described in the "Death or Insolvency" or "Creditor or Forfeiture Proceedings" clauses, to the extent that any such default by a guarantor relates to the matters described in the clause "Death or Insolvency" of the paragraph entitled "DEFAULT", the entire unpaid principal balance on this Note and all accrued unpaid interest shall become immediately due, without notice, declaration or other action by Lender, and then Borrower will pay that amount. Upon the occurrence of any other default described in that paragraph, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice,

*09900162266900000031857000127*

and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other. (Initial Here ~~_____~~ )

**GOVERNING LAW.** This Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Alabama. This Note has been accepted by Lender in the State of Alabama.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by any and all Commercial Security Agreements covering a Blanket Lien on all Accounts Receivable and Inventory of Debtor; Negative Pledge dated 10/26/2004 covering the personal residence of Carl Phillips is 1267 East Main, Ariton, Alabama 36311 and the personal residence of Charles Carter, III at 503 Black Lake Road, Ariton, Alabama 36311.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or of any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**FINANCIAL STATEMENTS.** Until this loan is paid in full, Borrower will furnish to Lender, as soon as available but in any event within 120 days after the end of each fiscal year, Borrower's balance sheet and statements of income, cash flows and changes in capital for the fiscal year just ended, setting forth in comparative form the corresponding figures for the prior year, together with accompanying schedules and footnotes. If the financial statements were compiled or certified by a public accountant, Borrower will also furnish Lender the accountant's letter accompanying the financial statements. Borrower will furnish to Lender, as soon as available but in any event within 30 days after the end of the first three quarters of Borrower's fiscal year, Borrower's balance sheet and profit and loss statement for the quarter just ended. All financial reports provided to Lender will be certified in writing by the chief executive officer, chief financial officer, managing partner or comparable financial officer of Borrower to be true and complete to the best of his or her knowledge and belief and to have been prepared in accordance with generally accepted accounting principles applied on a basis consistent with the financial statements previously furnished to Lender or, if not so prepared, setting forth the manner in which the financial statements depart therefrom. Borrower will furnish Lender, within 30 days after Lender's request therefore, a copy of the federal income tax return most recently filed by Borrower. Borrower will cause each guarantor or endorser of this loan to furnish to Lender, within 30 days after Lender's request therefore, a current financial statement of such guarantor or endorser in form acceptable to Lender and a copy of the federal income tax return most recently filed by such guarantor or endorser.

**OBLIGATION TO DEVELOP BUSINESS PLAN.** Before approving this loan, Lender required Borrower to furnish Lender with financial statements and other information concerning the financial history and future prospects of Borrower's business. Lender requested and reviewed that information solely to enable it to make a decision whether to extend credit. Borrower understands that Lender has not necessarily approved Borrower's business plan and has not undertaken any duty or obligation to advise Borrower on business matters now or in the future. Lender is not a financial or business advisor, and Borrower will not look to Lender for business advice. Lender's role is solely that of a lender, and Borrower's relationship with Lender is that of debtor and creditor. Lender expressly disclaims any fiduciary or other duties or obligations to Borrower except those expressly provided in the written loan documents signed by Lender.

**NO ORAL AGREEMENTS.** Lender's agreement to lend, Borrower's obligation to repay the loan, and all other agreements between Lender and Borrower have been reduced to writing. This instrument and the other documents signed concurrently with it contain the entire agreement between Lender and Borrower. Any prior conversations and discussions that Lender or Borrower may have had concerning the transaction are not binding unless reflected in the written loan documents. Borrower acknowledges that the loan documents reflect everything the Lender has agreed to do or not to do in connection with this transaction.

**COMMERCIAL PURPOSES.** Borrower intends to use the loan proceeds solely for business or commercial related purposes and under no circumstances will such proceeds be used for personal, family or household purposes.

**ANNUAL THIRTY (30) DAY "CLEAN-UP".** A condition of this loan is that draws and balances are subject to a thirty (30) day annual "clean-up" wherein the entire outstanding balance must be paid in full and result in a zero balance for at least a consecutive thirty (30) day period during the term of the loan.

**VARIABLE RATE CHANGE FREQUENCY.** The interest rate change will occur each day the Index Rate changes. This change will not occur more often than once each day.

**IMPORTANT NOTICE REGARDING ESCROW ACCOUNTS.** This is to advise that Lender does not escrow funds for the payment of Property Taxes and Hazard Insurance. Payment of Property Taxes and Hazard Insurance are the responsibility of the customer .

**PRIOR NOTE.** Revolving Note dated 01/25/1999 in the amount of $260,000.00 from SouthTech Industries, Inc. to SouthTrust Bank. .

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: SouthTrust Bank, Commercial Loans Ozark 147, 242 West Reynolds Street, P O Box 1049, Ozark, AL  36360

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.



*099001522669000000318570001127*

**PROMISSORY NOTE**
**(Continued)**

Loan No: 0000031857                                                          Page 3

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

THIS NOTE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS NOTE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

SOUTHTECH INDUSTRIES, INC.

By: _____ (Seal)
CARL PHILLIPS, PRESIDENT of SOUTHTECH
INDUSTRIES, INC.

LASER PRO Lending, Ver. 5.24.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - AL  L:\CFI\WIN\CFI\LPL\D20.FC  TR-52151  PR-2



*03600152286900000031857000128*

## DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $250,000.00 | 10-26-2004 | 04-24-2005 | 0000031857 | 0001 / 700 | 0015226690 | AEX | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** SOUTHTECH INDUSTRIES, INC. (TIN: 63-1215840)
HIGHWAY 123
ARITON, AL 36311

**Lender:** SouthTrust Bank
Commercial Loans Ozark 147
242 West Reynolds Street
P O Box 1049
Ozark, AL 36360
(334) 774-9313

**LOAN TYPE.** This is a Variable Rate Nondisclosable Revolving Line of Credit Loan to a Corporation for $250,000.00 due on April 24, 2005. The reference rate ("base rate"). The term "base rate" means the rate of interest designated by the Lender periodically as its Base Rate, currently 4.750%) is added to the margin of 1.000%, resulting in an initial rate of 5.750. This is a secured renewal of the following described indebtedness: Revolving Note dated 01/26/1999 in the amount of $250,000.00 from SouthTech Industries, Inc. to SouthTrust Bank.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for (please initial):

☐ _____ Personal, Family, or Household Purposes or Personal Investment.

☒ _____ Business (Including Real Estate Investment).

**DISBURSEMENT INSTRUCTIONS.** Borrower understands that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $250,000.00 as follows:

| | |
|---|---|
| Amount paid to Borrower directly:<br>$250,000.00 Deposited to Account # 0015226690-31857 | $250,000.00 |
| Note Principal: | $250,000.00 |

**CHARGES PAID IN CASH.** Borrower has paid or will pay in cash as agreed the following charges:

| | |
|---|---|
| Prepaid Finance Charges Paid in Cash: | $0.00 |
| Other Charges Paid in Cash:<br>$150.00  BANK PREPARED DOC FEE<br>$375.00  ORIGINATION FEE - UP FRONT<br>$2,451.25  INTEREST DUE | $2,976.25 |
| Total Charges Paid in Cash: | $2,976.25 |

**FINANCIAL CONDITION.** BY SIGNING THIS AUTHORIZATION, BORROWER REPRESENTS AND WARRANTS TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN BORROWER'S FINANCIAL CONDITION AS DISCLOSED IN BORROWER'S MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED OCTOBER 26, 2004.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

**BORROWER:**

SOUTHTECH INDUSTRIES, INC.

By: _Carl Phillips_ [Seal]
CARL PHILLIPS, PRESIDENT of SOUTHTECH INDUSTRIES, INC.

LASER PRO Lending, Ver. 5.24.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2004.  All Rights Reserved.  - AL L:\CFI\WIN\CFI\LPL\G02.FC  TR-52133  PR-2

**EXHIBIT "F"**

**ALLONGE**

**(Asset 3101)**

This Allonge, dated as of May _19_, 2006, is attached to and made part of the following instrument:

> Promissory Note dated October 26, 2004 executed by SouthTech Industries, Inc in favor of SouthTrust Bank in the original principal amount of $250,000, as affected by that certain Forbearance Agreement dated January 11, 2006 between SouthTech Enterprises, LLC, SouthTech Industries, Inc., Carl A. Phillips, Jann C. Phillips, Charles F. Carter, III, Shannon Marie Carter and Wachovia Bank, National Association, successor by merger to SouthTrust Bank.

for the purpose of annexing thereto the following endorsement:

> Pay to the order of **CAPITAL CROSSING BANK** ("Buyer"), its successors and assigns, WITHOUT REPRESENTATION, WARRANTY OR RECOURSE OF ANY NATURE WHATSO-EVER, WHETHER EXPRESSED OR IMPLIED, except and only to the extent otherwise provided in that certain Asset Sale Agreement, dated May _9_, 2006, between Buyer and Wachovia Bank, National Association.

**WACHOVIA BANK, NATIONAL ASSOCIATION**, successor by merger to SouthTrust Bank

By: _____

Margaret B. Flight
Vice President

JACK_537351.1

EXHIBIT "G"

## UNCONDITIONAL GUARANTY

January 11, 2006

SouthTech Enterprises, LLC
P. O. Box 720
Ariton, AL 36311
("Borrower")

Charles F. Carter, III
503 Black Lake Road
Ariton, AL 36311

Shannon Marie Carter
503 Black Lake Road
Ariton, AL 36311
(Individually and collectively, "Guarantor")

Wachovia Bank, National Association
214 North Hogan Street - FL0070
Jacksonville, Florida 32202
(Hereinafter referred to as "Bank")

To induce Bank to make, extend or renew or to forbear from enforcing loans, advances, credit, or other financial accommodations to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, and in consideration of loans, advances, credit, or other financial accommodations made, extended or renewed or forbearance accommodations made to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of Borrower to Bank and its affiliates, including, but not limited to, all obligations under any notes, loan agreements, security agreements, mortgages, letters of credit, instruments, accounts receivable, contracts, drafts, leases, chattel paper, indemnities, acceptances, repurchase agreements, overdrafts, forbearance agreements, and the Loan Documents, as defined below, and all obligations of Borrower to Bank or any of its affiliates under any swap agreement (as defined in 11 U.S. Code § 101), however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, due or to become due, now existing or hereafter contracted or acquired, and all modifications, extensions and renewals thereof, and whether in good standing or in default (collectively, the "Guaranteed Obligations").

Guarantor further covenants and agrees:

**GUARANTOR'S LIABILITY.** This Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection. The parties to this Guaranty are jointly and severally obligated hereunder. This Guaranty does not impose any obligation on Bank to extend or continue to extend credit or otherwise deal with Borrower at any subsequent time. This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Guaranteed Obligations is rescinded, avoided or for any other reason must be returned by Bank, and the returned payment shall remain payable as part of the Guaranteed

Obligations, all as though such payment had not been made. Except to the extent the provisions of this Guaranty give Bank additional rights, this Guaranty shall not be deemed to supersede or replace any other guaranties given to Bank by Guarantor; and the obligations guaranteed hereby shall be in addition to any other obligations guaranteed by Guarantor pursuant to any other agreement of guaranty given to Bank and other guaranties of the Guaranteed Obligations.

**TERMINATION OF GUARANTY.** Guarantor may terminate this Guaranty only by written notice, delivered personally to or received by certified or registered United States Mail by an authorized officer of Bank at the address for notices provided herein. Such termination shall be effective with respect to Guaranteed Obligations arising more than 15 days after the date such written notice is received by said Bank officer. Such termination shall not be effective with respect to Guaranteed Obligations (including any subsequent extensions, modifications or compromises of the Guaranteed Obligations) then existing, or Guaranteed Obligations arising subsequent to receipt by Bank of said notice if such Guaranteed Obligations are a result of Bank's obligation to make advances pursuant to a commitment, or are based on Borrower's obligations to make payments pursuant to any swap agreement (as defined in 11 U.S.C. § 101), entered into prior to expiration of the 15 day notice period, or are a result of advances which are necessary for Bank to protect its collateral or otherwise preserve its interests. Termination of this Guaranty by any single Guarantor will not affect the existing and continuing obligations of any other Guarantor hereunder.

**CONSENT TO MODIFICATIONS.** Guarantor **consents and agrees that Bank (and, with respect to swap obligations, its affiliates) may from time to time, in its sole discretion, without affecting, impairing, lessening or releasing the obligations of Guarantor hereunder:** (a) extend or modify the time, manner, place or terms of payment or performance and/or otherwise change or modify the credit terms of the Guaranteed Obligations; (b) increase, renew, or enter into a novation of the Guaranteed Obligations; (c) waive or consent to the departure from terms of the Guaranteed Obligations; (d) permit any change in the business or other dealings and relations of Borrower or any other guarantor with Bank; (e) proceed against, exchange, release, realize upon, or otherwise deal with in any manner any collateral that is or may be held by Bank in connection with the Guaranteed Obligations or any liabilities or obligations of Guarantor; and (f) proceed against, settle, release, or compromise with Borrower, any insurance carrier, or any other person or entity liable as to any part of the Guaranteed Obligations, and/or subordinate the payment of any part of the Guaranteed Obligations to the payment of any other obligations, which may at any time be due or owing to Bank; all in such manner and upon such terms as Bank may deem appropriate, and without notice to or further consent from Guarantor. No invalidity, irregularity, discharge or unenforceability of, or action or omission by Bank relating to any part of the Guaranteed Obligations or any security therefor shall affect or impair this Guaranty.

**WAIVERS AND ACKNOWLEDGMENTS.** Guarantor **waives and releases the following rights, demands, and defenses** Guarantor may have with respect to Bank (and, with respect to swap obligations, its affiliates) and collection of the Guaranteed Obligations: (a) promptness and diligence in collection of any of the Guaranteed Obligations from Borrower or any other person liable thereon, and in foreclosure of any security interest and sale of any property serving as collateral for the Guaranteed Obligations; (b) any law or statute that requires that Bank (and, with respect to swap obligations, its affiliates) make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Guarantor with respect to the Guaranteed Obligations, including any such rights Guarantor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, O.C.G.A. § 10-7-24 and any successor statute and any other applicable law; (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of

any action against Guarantor; (d) that Bank or its affiliates preserve, insure or perfect any security interest in collateral or sell or dispose of collateral in a particular manner or at a particular time, provided that Bank's obligation to dispose of Collateral in a commercially reasonable manner is not waived hereby; (e) notice of extensions, modifications, renewals, or novations of the Guaranteed Obligations, of any new transactions or other relationships between Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any other guarantor; (f) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale, and all other notices of any kind whatsoever to which Guarantor may be entitled; (g) the right to assert against Bank or its affiliates any defense (legal or equitable), set-off, counterclaim, or claim that Guarantor may have at any time against Borrower or any other party liable to Bank or its affiliates; (h) all defenses relating to invalidity, insufficiency, unenforceability, enforcement, release or impairment of Bank or its affiliates' lien on any collateral, of the Loan Documents, or of any other guaranties held by Bank; (i) any right to which Guarantor is or may become entitled to be subrogated to Bank or its affiliates' rights against Borrower or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank or its affiliates against Borrower or any security which Bank or its affiliates now has or hereafter acquires, until such time as the Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period; (j) any claim or defense that acceleration of maturity of the Guaranteed Obligations is stayed against Guarantor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (k) the right to marshalling of Borrower's assets or the benefit of any exemption claimed by Guarantor. Guarantor acknowledges and represents that Guarantor has relied upon Guarantor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral; Guarantor will continue to be responsible for making an independent appraisal of such matters; and Guarantor has not relied upon Bank or its affiliates for information regarding Borrower or any collateral.

**INTEREST AND APPLICATION OF PAYMENTS.** Regardless of any other provision of this Guaranty or other Loan Documents, if for any reason the effective interest on any of the Guaranteed Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Guaranteed Obligations. Monies received from any source by Bank or its affiliates for application toward payment of the Guaranteed Obligations may be applied to such Guaranteed Obligations in any manner or order deemed appropriate by Bank and its affiliates.

**DEFAULT.** If any of the following events occur, a default ("Default") under this Guaranty shall exist: (a) failure of timely payment or performance of the Guaranteed Obligations or a default under any Loan Document; (b) a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Bank or its affiliates, whether now existing or hereafter arising; (c) the death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or the commencement of any insolvency or bankruptcy proceeding by or against Guarantor or any general partner of or the holder(s) of the majority ownership interests of Guarantor; and/or (d) Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Borrower or Guarantor, financial or otherwise.

If a Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice, other than Guaranteed Obligations under any swap agreements (as defined in 11 U.S.C. §

101) with Bank or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements, and, Bank and its affiliates may exercise any rights and remedies as provided in this Guaranty and other Loan Documents, or as provided at law or equity. Guarantor shall pay interest on the Guaranteed Obligations from such Default at the highest rate of interest charged on any of the Guaranteed Obligations.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Guarantor shall pay all of Bank's and its affiliates' reasonable expenses incurred to enforce or collect any of the Guaranteed Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any suit, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**MISCELLANEOUS. Assignment.** This Guaranty and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Guaranty and other Loan Documents are freely assignable, in whole or in part, by Bank. Any assignment shall not release Guarantor from the Guaranteed Obligations. **Organization; Powers.** Guarantor (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity (as indicated below), duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization, (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Guaranty and any other Loan Document to which it is a party. **Applicable Law; Conflict Between Documents.** This Guaranty shall be governed by and construed under the laws of the state named in Bank's address shown above without regard to that state's conflict of laws principles. If the terms of this Guaranty should conflict with the terms of any commitment letter that survives closing, the terms of this Guaranty shall control. **Jurisdiction.** Guarantor irrevocably agrees to non-exclusive personal jurisdiction in the state named in Bank's address shown above. **Severability.** If any provision of this Guaranty or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty or other Loan Documents. **Notices.** Any notices to Guarantor shall be sufficiently given if in writing and mailed or delivered to Guarantor's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7391, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7391, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Guarantor changes Guarantor's address at any time prior to the date the Guaranteed Obligations are paid in full, Guarantor agrees to promptly give written notice of said change of address to Bank by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Guarantor by execution of and Bank by acceptance of this Guaranty agree that each party is bound to all terms and provisions of this Guaranty. **Amendments, Waivers and Remedies.** No waivers, amendments or modifications of this Guaranty and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank or its affiliates of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank or its affiliates in

exercising any right, power, or privilege granted pursuant to this Guaranty and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. All remedies available to Bank or its affiliates with respect to this Guaranty and other Loan Documents and remedies available at law or in equity shall be cumulative and may be pursued concurrently or successively. **Partnerships.** If Guarantor is a partnership, the obligations, liabilities and agreements on the part of Guarantor shall remain in full force and effect and fully applicable notwithstanding any changes in the individuals comprising the partnership. The term "Guarantor" includes any altered or successive partnerships, and predecessor partnership(s) and the partners shall not be released from any obligations or liabilities hereunder. **Loan Documents.** The term "Loan Documents" refers to all documents executed in connection with or related to the Guaranteed Obligations and may include, without limitation, commitment letters that survive closing, loan agreements, other guaranty agreements, security agreements, instruments, financing statements, mortgages, deeds of trust, deeds to secure debt, letters of credit and any amendments or supplements (excluding swap agreements as defined in 11 U.S. Code § 101). **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.

**FINANCIAL AND OTHER INFORMATION.** Guarantor shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Guarantor's financial condition. Such information shall be true, complete, and accurate.

**ANNUAL FINANCIAL STATEMENTS.** Guarantor shall deliver to Bank, within 90 days after the close of each fiscal year, unaudited management-prepared financial statements reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all on a consolidated and consolidating basis with respect to Guarantor and its subsidiaries, affiliates and parent or holding company, as applicable, and in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. If unaudited statements are required, such statements shall be certified as to their correctness by a principal financial officer of Guarantor.

**PERIODIC FINANCIAL STATEMENTS.** Guarantor shall deliver to Bank, within 45 days after the end of each fiscal year, unaudited management-prepared annual financial statements including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all on a consolidated and consolidating basis with respect to Guarantor and its subsidiaries, affiliates and parent or holding company, as applicable, all in reasonable detail and prepared in conformity with generally accepted accounting principles,

applied on a basis consistent with that of the preceding year. Such statements shall be certified as to their correctness by a principal financial officer of Guarantor and in each case, if audited statements are required, subject to audit and year-end adjustments.

**TAX RETURNS.** Guarantor shall deliver to Bank, within 30 days of filing, complete copies of federal and state tax returns, as applicable, together with all schedules thereto, each of which shall be signed and certified by Guarantor to be true and complete copies of such returns. In the event an extension is filed, Guarantor shall deliver a copy of the extension within 30 days of filing.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF GUARANTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS GUARANTY. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS GUARANTY.

**IN WITNESS WHEREOF**, Guarantor, as of the day and year first written above, has executed this Unconditional Guaranty.

_____
Charles F. Carter, III

_____
Shannon Marie Carter

00515961.DOC

EXHIBIT "H"

## UNCONDITIONAL GUARANTY

January 11, 2006

SouthTech Industries, Inc.
P. O. Box 720
Ariton, AL  36311
("Borrower")

Charles F. Carter, III
503 Black Lake Road
Ariton, AL  36311

Shannon Marie Carter
503 Black Lake Road
Ariton, AL  36311
(Individually and collectively, "Guarantor")

Wachovia Bank, National Association
214 North Hogan Street - FL0070
Jacksonville, Florida 32202
(Hereinafter referred to as "Bank")

To induce Bank to make, extend or renew or to forbear from enforcing loans, advances, credit, or other financial accommodations to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, and in consideration of loans, advances, credit, or other financial accommodations made, extended or renewed or forbearance accommodations made to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of Borrower to Bank and its affiliates, including, but not limited to, all obligations under any notes, loan agreements, security agreements, mortgages, letters of credit, instruments, accounts receivable, contracts, drafts, leases, chattel paper, indemnities, acceptances, repurchase agreements, overdrafts, forbearance agreements, and the Loan Documents, as defined below, and all obligations of Borrower to Bank or any of its affiliates under any swap agreement (as defined in 11 U.S. Code § 101), however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, due or to become due, now existing or hereafter contracted or acquired, and all modifications, extensions and renewals thereof, and whether in good standing or in default (collectively, the "Guaranteed Obligations").

Guarantor further covenants and agrees:

**GUARANTOR'S LIABILITY.**  This Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection.  The parties to this Guaranty are jointly and severally obligated hereunder.  This Guaranty does not impose any obligation on Bank to extend or continue to extend credit or otherwise deal with Borrower at any subsequent time.  This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Guaranteed Obligations is rescinded, avoided or for any other reason must be returned by Bank, and the returned payment shall remain payable as part of the Guaranteed

Obligations, all as though such payment had not been made. Except to the extent the provisions of this Guaranty give Bank additional rights, this Guaranty shall not be deemed to supersede or replace any other guaranties given to Bank by Guarantor; and the obligations guaranteed hereby shall be in addition to any other obligations guaranteed by Guarantor pursuant to any other agreement of guaranty given to Bank and other guaranties of the Guaranteed Obligations.

**TERMINATION OF GUARANTY.** Guarantor may terminate this Guaranty only by written notice, delivered personally to or received by certified or registered United States Mail by an authorized officer of Bank at the address for notices provided herein. Such termination shall be effective with respect to Guaranteed Obligations arising more than 15 days after the date such written notice is received by said Bank officer. Such termination shall not be effective with respect to Guaranteed Obligations (including any subsequent extensions, modifications or compromises of the Guaranteed Obligations) then existing, or Guaranteed Obligations arising subsequent to receipt by Bank of said notice if such Guaranteed Obligations are a result of Bank's obligation to make advances pursuant to a commitment, or are based on Borrower's obligations to make payments pursuant to any swap agreement (as defined in 11 U.S.C. § 101), entered into prior to expiration of the 15 day notice period, or are a result of advances which are necessary for Bank to protect its collateral or otherwise preserve its interests. Termination of this Guaranty by any single Guarantor will not affect the existing and continuing obligations of any other Guarantor hereunder.

**CONSENT TO MODIFICATIONS.** Guarantor **consents and agrees that Bank (and, with respect to swap obligations, its affiliates) may from time to time, in its sole discretion, without affecting, impairing, lessening or releasing the obligations of Guarantor hereunder:** (a) extend or modify the time, manner, place or terms of payment or performance and/or otherwise change or modify the credit terms of the Guaranteed Obligations; (b) increase, renew, or enter into a novation of the Guaranteed Obligations; (c) waive or consent to the departure from terms of the Guaranteed Obligations; (d) permit any change in the business or other dealings and relations of Borrower or any other guarantor with Bank; (e) proceed against, exchange, release, realize upon, or otherwise deal with in any manner any collateral that is or may be held by Bank in connection with the Guaranteed Obligations or any liabilities or obligations of Guarantor; and (f) proceed against, settle, release, or compromise with Borrower, any insurance carrier, or any other person or entity liable as to any part of the Guaranteed Obligations, and/or subordinate the payment of any part of the Guaranteed Obligations to the payment of any other obligations, which may at any time be due or owing to Bank; all in such manner and upon such terms as Bank may deem appropriate, and without notice to or further consent from Guarantor. No invalidity, irregularity, discharge or unenforceability of, or action or omission by Bank relating to any part of the Guaranteed Obligations or any security therefor shall affect or impair this Guaranty.

**WAIVERS AND ACKNOWLEDGMENTS.** Guarantor **waives and releases the following rights, demands, and defenses** Guarantor may have with respect to Bank (and, with respect to swap obligations, its affiliates) and collection of the Guaranteed Obligations: (a) promptness and diligence in collection of any of the Guaranteed Obligations from Borrower or any other person liable thereon, and in foreclosure of any security interest and sale of any property serving as collateral for the Guaranteed Obligations; (b) any law or statute that requires that Bank (and, with respect to swap obligations, its affiliates) make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Guarantor with respect to the Guaranteed Obligations, including any such rights Guarantor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, O.C.G.A. § 10-7-24 and any successor statute and any other applicable law; (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of

any action against Guarantor; (d) that Bank or its affiliates preserve, insure or perfect any security interest in collateral or sell or dispose of collateral in a particular manner or at a particular time, provided that Bank's obligation to dispose of Collateral in a commercially reasonable manner is not waived hereby; (e) notice of extensions, modifications, renewals, or novations of the Guaranteed Obligations, of any new transactions or other relationships between Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any other guarantor; (f) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale, and all other notices of any kind whatsoever to which Guarantor may be entitled; (g) the right to assert against Bank or its affiliates any defense (legal or equitable), set-off, counterclaim, or claim that Guarantor may have at any time against Borrower or any other party liable to Bank or its affiliates; (h) all defenses relating to invalidity, insufficiency, unenforceability, enforcement, release or impairment of Bank or its affiliates' lien on any collateral, of the Loan Documents, or of any other guaranties held by Bank; (i) any right to which Guarantor is or may become entitled to be subrogated to Bank or its affiliates' rights against Borrower or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank or its affiliates against Borrower or any security which Bank or its affiliates now has or hereafter acquires, until such time as the Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period; (j) any claim or defense that acceleration of maturity of the Guaranteed Obligations is stayed against Guarantor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (k) the right to marshalling of Borrower's assets or the benefit of any exemption claimed by Guarantor. Guarantor acknowledges and represents that Guarantor has relied upon Guarantor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral; Guarantor will continue to be responsible for making an independent appraisal of such matters; and Guarantor has not relied upon Bank or its affiliates for information regarding Borrower or any collateral.

**INTEREST AND APPLICATION OF PAYMENTS.** Regardless of any other provision of this Guaranty or other Loan Documents, if for any reason the effective interest on any of the Guaranteed Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Guaranteed Obligations. Monies received from any source by Bank or its affiliates for application toward payment of the Guaranteed Obligations may be applied to such Guaranteed Obligations in any manner or order deemed appropriate by Bank and its affiliates.

**DEFAULT.** If any of the following events occur, a default ("Default") under this Guaranty shall exist: (a) failure of timely payment or performance of the Guaranteed Obligations or a default under any Loan Document; (b) a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Bank or its affiliates, whether now existing or hereafter arising; (c) the death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or the commencement of any insolvency or bankruptcy proceeding by or against Guarantor or any general partner of or the holder(s) of the majority ownership interests of Guarantor; and/or (d) Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Borrower or Guarantor, financial or otherwise.

If a Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice, other than Guaranteed Obligations under any swap agreements (as defined in 11 U.S.C. §

101) with Bank or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements, and, Bank and its affiliates may exercise any rights and remedies as provided in this Guaranty and other Loan Documents, or as provided at law or equity. Guarantor shall pay interest on the Guaranteed Obligations from such Default at the highest rate of interest charged on any of the Guaranteed Obligations.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Guarantor shall pay all of Bank's and its affiliates' reasonable expenses incurred to enforce or collect any of the Guaranteed Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any suit, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**MISCELLANEOUS. Assignment.** This Guaranty and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Guaranty and other Loan Documents are freely assignable, in whole or in part, by Bank. Any assignment shall not release Guarantor from the Guaranteed Obligations. **Organization; Powers.** Guarantor (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity (as indicated below), duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization, (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Guaranty and any other Loan Document to which it is a party. **Applicable Law; Conflict Between Documents.** This Guaranty shall be governed by and construed under the laws of the state named in Bank's address shown above without regard to that state's conflict of laws principles. If the terms of this Guaranty should conflict with the terms of any commitment letter that survives closing, the terms of this Guaranty shall control. **Jurisdiction.** Guarantor irrevocably agrees to non-exclusive personal jurisdiction in the state named in Bank's address shown above. **Severability.** If any provision of this Guaranty or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty or other Loan Documents. **Notices.** Any notices to Guarantor shall be sufficiently given if in writing and mailed or delivered to Guarantor's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7391, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7391, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Guarantor changes Guarantor's address at any time prior to the date the Guaranteed Obligations are paid in full, Guarantor agrees to promptly give written notice of said change of address to Bank by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Guarantor by execution of and Bank by acceptance of this Guaranty agree that each party is bound to all terms and provisions of this Guaranty. **Amendments, Waivers and Remedies.** No waivers, amendments or modifications of this Guaranty and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank or its affiliates of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank or its affiliates in

exercising any right, power, or privilege granted pursuant to this Guaranty and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. All remedies available to Bank or its affiliates with respect to this Guaranty and other Loan Documents and remedies available at law or in equity shall be cumulative and may be pursued concurrently or successively. **Partnerships.** If Guarantor is a partnership, the obligations, liabilities and agreements on the part of Guarantor shall remain in full force and effect and fully applicable notwithstanding any changes in the individuals comprising the partnership. The term "Guarantor" includes any altered or successive partnerships, and predecessor partnership(s) and the partners shall not be released from any obligations or liabilities hereunder. **Loan Documents.** The term "Loan Documents" refers to all documents executed in connection with or related to the Guaranteed Obligations and may include, without limitation, commitment letters that survive closing, loan agreements, other guaranty agreements, security agreements, instruments, financing statements, mortgages, deeds of trust, deeds to secure debt, letters of credit and any amendments or supplements (excluding swap agreements as defined in 11 U.S. Code § 101). **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.

**FINANCIAL AND OTHER INFORMATION.** Guarantor shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Guarantor's financial condition. Such information shall be true, complete, and accurate.

**ANNUAL FINANCIAL STATEMENTS.** Guarantor shall deliver to Bank, within 90 days after the close of each fiscal year, unaudited management-prepared financial statements reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all on a consolidated and consolidating basis with respect to Guarantor and its subsidiaries, affiliates and parent or holding company, as applicable, and in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. If unaudited statements are required, such statements shall be certified as to their correctness by a principal financial officer of Guarantor.

**PERIODIC FINANCIAL STATEMENTS.** Guarantor shall deliver to Bank, within 45 days after the end of each fiscal year, unaudited management-prepared annual financial statements including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all on a consolidated and consolidating basis with respect to Guarantor and its subsidiaries, affiliates and parent or holding company, as applicable, all in reasonable detail and prepared in conformity with generally accepted accounting principles,

applied on a basis consistent with that of the preceding year. Such statements shall be certified as to their correctness by a principal financial officer of Guarantor and in each case, if audited statements are required, subject to audit and year-end adjustments.

**TAX RETURNS.** Guarantor shall deliver to Bank, within 30 days of filing, complete copies of federal and state tax returns, as applicable, together with all schedules thereto, each of which shall be signed and certified by Guarantor to be true and complete copies of such returns. In the event an extension is filed, Guarantor shall deliver a copy of the extension within 30 days of filing.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF GUARANTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS GUARANTY. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS GUARANTY.

**IN WITNESS WHEREOF**, Guarantor, as of the day and year first written above, has executed this Unconditional Guaranty.

_____
Charles F. Carter, III

_____
Shannon Marie Carter

00515961.DOC

**EXHIBIT "I"**

# UNCONDITIONAL GUARANTY

January 11, 2006

SouthTech Industries, Inc.
P. O. Box 720
Ariton, AL  36311
("Borrower")

SouthTech Enterprises, LLC
P. O. Box 720
Ariton, AL  36311
("Guarantor")

Wachovia Bank, National Association
214 North Hogan Street - FL0070
Jacksonville, Florida 32202
(Hereinafter referred to as "Bank")

To induce Bank to make, extend or renew or to forbear from enforcing loans, advances, credit, or other financial accommodations to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, and in consideration of loans, advances, credit, or other financial accommodations made, extended or renewed or forbearance accommodations made to or for the benefit of Borrower, which are and will be to the direct interest and advantage of the Guarantor, Guarantor hereby absolutely, irrevocably and unconditionally guarantees to Bank and its successors, assigns and affiliates the timely payment and performance of all liabilities and obligations of Borrower to Bank and its affiliates, including, but not limited to, all obligations under any notes, loan agreements, security agreements, mortgages, letters of credit, instruments, accounts receivable, contracts, drafts, leases, chattel paper, indemnities, acceptances, repurchase agreements, overdrafts, forbearance agreements, and the Loan Documents, as defined below, and all obligations of Borrower to Bank or any of its affiliates under any swap agreement (as defined in 11 U.S. Code § 101), however and whenever incurred or evidenced, whether primary, secondary, direct, indirect, absolute, contingent, due or to become due, now existing or hereafter contracted or acquired, and all modifications, extensions and renewals thereof, and whether in good standing or in default (collectively, the "Guaranteed Obligations").

Guarantor further covenants and agrees:

**GUARANTOR'S LIABILITY.** This Guaranty is a continuing and unconditional guaranty of payment and performance and not of collection. The parties to this Guaranty are jointly and severally obligated hereunder. This Guaranty does not impose any obligation on Bank to extend or continue to extend credit or otherwise deal with Borrower at any subsequent time. This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of the Guaranteed Obligations is rescinded, avoided or for any other reason must be returned by Bank, and the returned payment shall remain payable as part of the Guaranteed Obligations, all as though such payment had not been made. Except to the extent the provisions of this Guaranty give Bank additional rights, this Guaranty shall not be deemed to supersede or replace any other guaranties given to Bank by Guarantor; and the obligations guaranteed hereby shall be in addition to any other obligations guaranteed by Guarantor pursuant to any other agreement of guaranty given to Bank and other guaranties of the Guaranteed Obligations.

**TERMINATION OF GUARANTY.** Guarantor may terminate this Guaranty only by written notice, delivered personally to or received by certified or registered United States Mail by an authorized officer of Bank at the address for notices provided herein. Such termination shall be effective with respect to Guaranteed Obligations arising more than 15 days after the date such written notice is received by said Bank officer. Such termination shall not be effective with respect to Guaranteed Obligations (including any subsequent extensions, modifications or compromises of the Guaranteed Obligations) then existing, or Guaranteed Obligations arising subsequent to receipt by Bank of said notice if such Guaranteed Obligations are a result of Bank's obligation to make advances pursuant to a commitment, or are based on Borrower's obligations to make payments pursuant to any swap agreement (as defined in 11 U.S.C. § 101), entered into prior to expiration of the 15 day notice period, or are a result of advances which are necessary for Bank to protect its collateral or otherwise preserve its interests. Termination of this Guaranty by any single Guarantor will not affect the existing and continuing obligations of any other Guarantor hereunder.

**CONSENT TO MODIFICATIONS.** Guarantor **consents and agrees that Bank (and, with respect to swap obligations, its affiliates) may from time to time, in its sole discretion, without affecting, impairing, lessening or releasing the obligations of Guarantor hereunder:** (a) extend or modify the time, manner, place or terms of payment or performance and/or otherwise change or modify the credit terms of the Guaranteed Obligations; (b) increase, renew, or enter into a novation of the Guaranteed Obligations; (c) waive or consent to the departure from terms of the Guaranteed Obligations; (d) permit any change in the business or other dealings and relations of Borrower or any other guarantor with Bank; (e) proceed against, exchange, release, realize upon, or otherwise deal with in any manner any collateral that is or may be held by Bank in connection with the Guaranteed Obligations or any liabilities or obligations of Guarantor; and (f) proceed against, settle, release, or compromise with Borrower, any insurance carrier, or any other person or entity liable as to any part of the Guaranteed Obligations, and/or subordinate the payment of any part of the Guaranteed Obligations to the payment of any other obligations, which may at any time be due or owing to Bank; all in such manner and upon such terms as Bank may deem appropriate, and without notice to or further consent from Guarantor. No invalidity, irregularity, discharge or unenforceability of, or action or omission by Bank relating to any part of the Guaranteed Obligations or any security therefor shall affect or impair this Guaranty.

**WAIVERS AND ACKNOWLEDGMENTS. Guarantor waives and releases the following rights, demands, and defenses** Guarantor may have with respect to Bank (and, with respect to swap obligations, its affiliates) and collection of the Guaranteed Obligations: (a) promptness and diligence in collection of any of the Guaranteed Obligations from Borrower or any other person liable thereon, and in foreclosure of any security interest and sale of any property serving as collateral for the Guaranteed Obligations; (b) any law or statute that requires that Bank (and, with respect to swap obligations, its affiliates) make demand upon, assert claims against, or collect from Borrower or other persons or entities, foreclose any security interest, sell collateral, exhaust any remedies, or take any other action against Borrower or other persons or entities prior to making demand upon, collecting from or taking action against Guarantor with respect to the Guaranteed Obligations, including any such rights Guarantor might otherwise have had under Va. Code §§ 49-25 and 49-26, et seq., N.C.G.S. §§ 26-7, et seq., Tenn. Code Ann. § 47-12-101, O.C.G.A. § 10-7-24 and any successor statute and any other applicable law; (c) any law or statute that requires that Borrower or any other person be joined in, notified of or made part of any action against Guarantor; (d) that Bank or its affiliates preserve, insure or perfect any security interest in collateral or sell or dispose of collateral in a particular manner or at a particular time, provided that Bank's obligation to dispose of Collateral in a commercially reasonable manner is not waived hereby; (e) notice of extensions, modifications, renewals, or novations of the Guaranteed Obligations, of any new transactions or other relationships between

Bank, Borrower and/or any guarantor, and of changes in the financial condition of, ownership of, or business structure of Borrower or any other guarantor; (f) presentment, protest, notice of dishonor, notice of default, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale, and all other notices of any kind whatsoever to which Guarantor may be entitled; (g) the right to assert against Bank or its affiliates any defense (legal or equitable), set-off, counterclaim, or claim that Guarantor may have at any time against Borrower or any other party liable to Bank or its affiliates; (h) all defenses relating to invalidity, insufficiency, unenforceability, enforcement, release or impairment of Bank or its affiliates' lien on any collateral, of the Loan Documents, or of any other guaranties held by Bank; (i) any right to which Guarantor is or may become entitled to be subrogated to Bank or its affiliates' rights against Borrower or to seek contribution, reimbursement, indemnification, payment or the like, or participation in any claim, right or remedy of Bank or its affiliates against Borrower or any security which Bank or its affiliates now has or hereafter acquires, until such time as the Guaranteed Obligations have been fully satisfied beyond the expiration of any applicable preference period; (j) any claim or defense that acceleration of maturity of the Guaranteed Obligations is stayed against Guarantor because of the stay of assertion or of acceleration of claims against any other person or entity for any reason including the bankruptcy or insolvency of that person or entity; and (k) the right to marshalling of Borrower's assets or the benefit of any exemption claimed by Guarantor. Guarantor acknowledges and represents that Guarantor has relied upon Guarantor's own due diligence in making an independent appraisal of Borrower, Borrower's business affairs and financial condition, and any collateral; Guarantor will continue to be responsible for making an independent appraisal of such matters; and Guarantor has not relied upon Bank or its affiliates for information regarding Borrower or any collateral.

**INTEREST AND APPLICATION OF PAYMENTS.** Regardless of any other provision of this Guaranty or other Loan Documents, if for any reason the effective interest on any of the Guaranteed Obligations should exceed the maximum lawful interest, the effective interest shall be deemed reduced to and shall be such maximum lawful interest, and any sums of interest which have been collected in excess of such maximum lawful interest shall be applied as a credit against the unpaid principal balance of the Guaranteed Obligations. Monies received from any source by Bank or its affiliates for application toward payment of the Guaranteed Obligations may be applied to such Guaranteed Obligations in any manner or order deemed appropriate by Bank and its affiliates.

**DEFAULT.** If any of the following events occur, a default ("Default") under this Guaranty shall exist: (a) failure of timely payment or performance of the Guaranteed Obligations or a default under any Loan Document; (b) a breach of any agreement or representation contained or referred to in the Guaranty, or any of the Loan Documents, or contained in any other contract or agreement of Guarantor with Bank or its affiliates, whether now existing or hereafter arising; (c) the death of, appointment of a guardian for, dissolution of, termination of existence of, loss of good standing status by, appointment of a receiver for, assignment for the benefit of creditors of, or the commencement of any insolvency or bankruptcy proceeding by or against Guarantor or any general partner of or the holder(s) of the majority ownership interests of Guarantor; and/or (d) Bank determines in good faith, in its sole discretion, that the prospects for payment or performance of the Guaranteed Obligations are impaired or a material adverse change has occurred in the business or prospects of Borrower or Guarantor, financial or otherwise.

If a Default occurs, the Guaranteed Obligations shall be due immediately and payable without notice, other than Guaranteed Obligations under any swap agreements (as defined in 11 U.S.C. § 101) with Bank or its affiliates, which shall be due in accordance with and governed by the provisions of said swap agreements, and, Bank and its affiliates may exercise any rights and remedies as provided in this Guaranty and other Loan Documents, or as provided at law or equity. Guarantor shall pay interest on the Guaranteed Obligations from such Default at the highest rate of interest charged on any of the Guaranteed Obligations.

**ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Guarantor shall pay all of Bank's and its affiliates' reasonable expenses incurred to enforce or collect any of the Guaranteed Obligations, including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any suit, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

**MISCELLANEOUS. Assignment.** This Guaranty and other Loan Documents shall inure to the benefit of and be binding upon the parties and their respective heirs, legal representatives, successors and assigns. Bank's interests in and rights under this Guaranty and other Loan Documents are freely assignable, in whole or in part, by Bank. Any assignment shall not release Guarantor from the Guaranteed Obligations. **Organization; Powers.** Guarantor (i) is (a) an adult individual and is sui juris, or (b) a corporation, general partnership, limited partnership, limited liability company or other legal entity (as indicated below), duly organized, validly existing and in good standing under the laws of its state of organization, and is authorized to do business in each other jurisdiction wherein its ownership of property or conduct of business legally requires such organization, (ii) has the power and authority to own its properties and assets and to carry on its business as now being conducted and as now contemplated; and (iii) has the power and authority to execute, deliver and perform, and by all necessary action has authorized the execution, delivery and performance of, all of its obligations under this Guaranty and any other Loan Document to which it is a party. **Applicable Law; Conflict Between Documents.** This Guaranty shall be governed by and construed under the laws of the state named in Bank's address shown above without regard to that state's conflict of laws principles. If the terms of this Guaranty should conflict with the terms of any commitment letter that survives closing, the terms of this Guaranty shall control. **Jurisdiction.** Guarantor irrevocably agrees to non-exclusive personal jurisdiction in the state named in Bank's address shown above. **Severability.** If any provision of this Guaranty or of the other Loan Documents shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty or other Loan Documents. **Notices.** Any notices to Guarantor shall be sufficiently given if in writing and mailed or delivered to Guarantor's address shown above or such other address as provided hereunder, and to Bank, if in writing and mailed or delivered to Wachovia Bank, National Association, Mail Code VA7391, P. O. Box 13327, Roanoke, VA 24040 or Wachovia Bank, National Association, Mail Code VA7391, 10 South Jefferson Street, Roanoke, VA 24011 or such other address as Bank may specify in writing from time to time. Notices to Bank must include the mail code. In the event that Guarantor changes Guarantor's address at any time prior to the date the Guaranteed Obligations are paid in full, Guarantor agrees to promptly give written notice of said change of address to Bank by registered or certified mail, return receipt requested, all charges prepaid. **Plural; Captions.** All references in the Loan Documents to borrower, guarantor, person, document or other nouns of reference mean both the singular and plural form, as the case may be, and the term "person" shall mean any individual person or entity. The captions contained in the Loan Documents are inserted for convenience only and shall not affect the meaning or interpretation of the Loan Documents. **Binding Contract.** Guarantor by execution of and Bank by acceptance of this Guaranty agree that each party is bound to all terms and provisions of this Guaranty. **Amendments, Waivers and Remedies.** No waivers, amendments or modifications of this Guaranty and other Loan Documents shall be valid unless in writing and signed by an officer of Bank. No waiver by Bank or its affiliates of any Default shall operate as a waiver of any other Default or the same Default on a future occasion. Neither the failure nor any delay on the part of Bank or its affiliates in exercising any right, power, or privilege granted pursuant to this Guaranty and other Loan Documents shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. All remedies available to Bank or its affiliates with respect to this Guaranty and other Loan Documents and remedies available at law or in equity shall be cumulative and may be pursued

concurrently or successively. **Partnerships.** If Guarantor is a partnership, the obligations, liabilities and agreements on the part of Guarantor shall remain in full force and effect and fully applicable notwithstanding any changes in the individuals comprising the partnership. The term "Guarantor" includes any altered or successive partnerships, and predecessor partnership(s) and the partners shall not be released from any obligations or liabilities hereunder. **Loan Documents.** The term "Loan Documents" refers to all documents executed in connection with or related to the Guaranteed Obligations and may include, without limitation, commitment letters that survive closing, loan agreements, other guaranty agreements, security agreements, instruments, financing statements, mortgages, deeds of trust, deeds to secure debt, letters of credit and any amendments or supplements (excluding swap agreements as defined in 11 U.S. Code § 101). **LIMITATION ON LIABILITY; WAIVER OF PUNITIVE DAMAGES.** EACH OF THE PARTIES HERETO, INCLUDING BANK BY ACCEPTANCE HEREOF, AGREES THAT IN ANY JUDICIAL, MEDIATION OR ARBITRATION PROCEEDING OR ANY CLAIM OR CONTROVERSY BETWEEN OR AMONG THEM THAT MAY ARISE OUT OF OR BE IN ANY WAY CONNECTED WITH THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER AGREEMENT OR DOCUMENT BETWEEN OR AMONG THEM OR THE OBLIGATIONS EVIDENCED HEREBY OR RELATED HERETO, IN NO EVENT SHALL ANY PARTY HAVE A REMEDY OF, OR BE LIABLE TO THE OTHER FOR, (1) INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES OR (2) PUNITIVE OR EXEMPLARY DAMAGES. EACH OF THE PARTIES HEREBY EXPRESSLY WAIVES ANY RIGHT OR CLAIM TO PUNITIVE OR EXEMPLARY DAMAGES THEY MAY HAVE OR WHICH MAY ARISE IN THE FUTURE IN CONNECTION WITH ANY SUCH PROCEEDING, CLAIM OR CONTROVERSY, WHETHER THE SAME IS RESOLVED BY ARBITRATION, MEDIATION, JUDICIALLY OR OTHERWISE.

**FINANCIAL AND OTHER INFORMATION.** Guarantor shall deliver to Bank such information as Bank may reasonably request from time to time, including without limitation, financial statements and information pertaining to Guarantor's financial condition. Such information shall be true, complete, and accurate.

**ANNUAL FINANCIAL STATEMENTS.** Guarantor shall deliver to Bank, within 90 days after the close of each fiscal year, unaudited management-prepared financial statements reflecting its operations during such fiscal year, including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all on a consolidated and consolidating basis with respect to Guarantor and its subsidiaries, affiliates and parent or holding company, as applicable, and in reasonable detail, prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. If unaudited statements are required, such statements shall be certified as to their correctness by a principal financial officer of Guarantor.

**PERIODIC FINANCIAL STATEMENTS.** Guarantor shall deliver to Bank, within 45 days after the end of each fiscal year, unaudited management-prepared annual financial statements including, without limitation, a balance sheet, profit and loss statement and statement of cash flows, with supporting schedules; all on a consolidated and consolidating basis with respect to Guarantor and its subsidiaries, affiliates and parent or holding company, as applicable, all in reasonable detail and prepared in conformity with generally accepted accounting principles, applied on a basis consistent with that of the preceding year. Such statements shall be certified as to their correctness by a principal financial officer of Guarantor and in each case, if audited statements are required, subject to audit and year-end adjustments.

**TAX RETURNS.** Guarantor shall deliver to Bank, within 30 days of filing, complete copies of federal and state tax returns, as applicable, together with all schedules thereto, each of which shall be signed and certified by Guarantor to be true and complete copies of such returns. In the event an extension is filed, Guarantor shall deliver a copy of the extension within 30 days of filing.

**WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF GUARANTOR BY EXECUTION HEREOF AND BANK BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO BANK TO ACCEPT THIS GUARANTY. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS GUARANTY.

**IN WITNESS WHEREOF,** Guarantor, as of the day and year first written above, has caused the execution of this Unconditional Guaranty by its properly and duly authorized representative.

SOUTHTECH ENTERPRISES, LLC, an Alabama limited liability company

By _Chad A. Cath_

Name: _____

Its _Ceo / Plant manager_

(SEAL)

00515958.DOC